I.
Forty-eight year old Heze Cockrell stands about six feet, two inches tall and weighs in at a rather sizable 528 pounds, but he has been felled by less than an ounce — of marijuana, that is, marijuana he sold to an undercover narcotics agent on November 20, 1986. The Circuit Court convicted Cockrell of this offense, and on appeal he presents a rather novel claim of a discovery violation arising from a tape recording the agent made of the sale. We affirm.
 II.
James E. Taggert, Jr. works in Tuscaloosa, Alabama, for the Sheriff's Department and was assigned to the West Alabama Narcotics Squad but in November of 1986, he was working with the Mississippi — Lowndes County Narcotics Squad as an undercover agent. Sometime previously Agent Taggert, with the able assistance of confidential informant Daniel Smart, had approached Heze Cockrell who lived in the Piney Woods Subdivision in Noxubee County and sought to purchase marijuana. Cockrell said he was out and directed Taggert down the street to another supplier. *Page 1244 
On November 20, Taggert and Smart again traveled to Noxubee County, backed up by the usual surveillance team. Taggert wore concealed on his person a micro-cassette tape recorder for the purpose of recording any conversations that took place. They arrived at Cockrell's home, and Smart got out, walked up to the front door and knocked. Cockrell came to the door and the two walked out on the carport, and at that point Smart beckoned to Taggert to join them. Taggert says when he reached the carport Smart and Cockrell were talking about marijuana. Taggert told Cockrell he would like to buy some and asked if Cockrell had any "good stuff." Cockrell assured him that he did and said it was the same marijuana that Taggert had purchased from the person up the street to whom Cockrell had referred him the first time Taggert came to Cockrell's house.[1]
Cockrell then invited Taggert and Smart inside the house. Moments later, Cockrell delivered a "dime bag" of marijuana to Taggert who handed Cockrell two five dollar bills. According to Taggert, "After we made the purchase, we turned and walked out."
The substance Taggert purchased was chemically analyzed and conclusively shown to be marijuana.
In this state of the record there can be no question regarding the sufficiency of the evidence to undergird the judgment that Cockrell stand convicted of sale of marijuana, notwithstanding Cockrell's testimony and vehement denials. See, e.g., Doby v.State, 557 So.2d 533, 535-36 (Miss. 1990); Clemons v. State,482 So.2d 1102, 1105-6 (Miss. 1985); Pate v. State,419 So.2d 1324, 1326 (Miss. 1982).
Cockrell had been convicted of a similar offense on March 10, 1987, by reason of which the Circuit Court sentenced him as an habitual offender to six years imprisonment. Miss.Code §41-29-139(b)(3) and -147 (Supp. 1986).
 III.
The question on appeal concerns the tape recording Agent Taggert made on the evening in question. Taggert had his recorder on during the brief conversation on the carport but, as fate would have it, once inside the house, he encountered a television set with the volume turned up quite high. The prosecution had produced the recording to Cockrell before trial, although no formal discovery request was made, see Moore v. State,536 So.2d 909, 911 (Miss. 1988), and defense counsel had listened to it.
At trial the prosecution did not offer the recording as a part of its case in chief. Cockrell testified in his own defense and denied the essential elements of the prosecution's case. Cockrell admitted that Daniel Smart came to his home but denied that Agent Taggert was anywhere in sight. On cross examination Cockrell denied that his voice would appear on any tape recording that Taggert may have made. The prosecuting attorney then eased out his line and lure to Cockrell who, unable to resist, proceeded to deny each statement Taggert claimed he had made. Cockrell particularly denied telling Taggert that his marijuana was as good as what Taggert had "got up the street."
After the defense rested, the prosecution in rebuttal offered a portion of the tape recording. The specific question and answer sequence at issue on the tape is as follows:
 By Mr. Cockrell: Not much — I — to you.
 A Voice: Did I hear you say dope?
 By Mr. Cockrell: Uh-huh. They the same dope, you know, he had.
 A Voice: How do I — how do I know was it this — after that first house?
 By Mr. Cockrell: Just try it; try one of these here.
Such a recording is admissible both for its incriminating contents and, as well, to establish that the accused and the undercover agent were present and together on the scene at the time in question. See *Page 1245 Middlebrook v. State, 555 So.2d 1009, 1013 (Miss. 1990). Taggert identified the voice on the tape as belonging to Cockrell and identified the rather identifiable defendant sitting in the court room as the individual whose voice was reflected on the tape. Without question, this evidence was proper rebuttal in light of Cockrell's denials while he was on cross examination.
These points settled, we confront Cockrell's rather unusual discovery objection.[2] Cockrell's attorney conceded that the prosecution had made the tape available to him prior to trial. He said he had been given the opportunity to listen to it.
 I've heard that tape yesterday and I can't hear nothing on it. All I heard was a noise and a TV and I didn't ever even hear any voices on that tape.
Counsel went on to point out that the prosecution was using a different tape player in court that "is a somewhat better model than the one we had" when he had listened to the tape previously. The essence of Cockrell's complaint is that the prosecution withheld discovery by failing to provide a tape player that would reproduce — and render audible — the sounds and voices concededly preserved on the tape. He said the sounds had been indecipherable and the voices indistinguishable — "it was just static" — on the recording he had been allowed to listen to in discovery and then to his surprise at trial the tape had achieved far greater audio quality.[3] Cockrell claims that this was a violation of the prosecution's duty in discovery, and, while he attributes no malice or improper practice to the prosecution, he says that he is greatly prejudiced nevertheless.
At no point, we might add, did Cockrell request a mistrial or a continuance.
These facts resemble those in Gallion v. State,517 So.2d 1364 (Miss. 1987). In Gallion the defendant was on trial for bank robbery. It appeared that a surveillance camera in the bank had taken photographs at the time, but these had been misplaced and hence not produced in discovery. As a part of his strategy at trial, Gallion pointed to the fact that there were no photographs showing him in the bank. At a recess during the course of trial, the prosecuting attorneys found that the photographs had not been destroyed after all and produced them to impeach and rebut the testimony Gallion was offering. Even though the defense had not seen the photographs prior to trial, we held them admissible as rebuttal evidence in view of the unfair advantage Gallion sought to take of the photographs' absence. In today's case, Cockrell was only slightly less blatant in his defense. Gallion suggests affirmance.
There is a more solid basis for rejection of Cockrell's appeal. He failed to take advantage of procedural opportunities more than adequate to remedy his plight. Long before Cockrell's trial, we accepted in our law of criminal discovery that, when confronted by evidence that should have been produced in discovery but was not, the defendant, upon timely objection, is entitled first to an examination and inspection of the evidence and thereafter, if he requests such, to a continuance. See, e.g., Rule 4.06(i)(2), Miss.Unif.Crim.R.Cir.Ct. Prac. (1990); West v. State,553 So.2d 8, 18-19 (Miss. 1989); Houston v. State, 531 So.2d 598, 611-12 (Miss. 1988); Cole v. State, 525 So.2d 365, 367-68 (Miss. 1987); Foster v. State, 484 So.2d 1009, 1011 (Miss. 1986); and particularly Box v. State, 437 So.2d 19, 23-24 (Miss. 1983) (Robertson, J., concurring). Gallion aside, let us assume that Cockrell's defense strategy was formulated upon his belief that the prosecution had no tape recording that would place Cockrell and Agent Taggert together on the scene or provide incriminating comments by Cockrell. The Box guidelines — *Page 1246 
now codified in Rule 4.06(i) — are premised on the view that prejudice determinations may best be made by the party affected.See Hentz v. State, 489 So.2d 1386, 1388 (Miss. 1986). Had Cockrell requested a continuance or mistrial, the Circuit Court may have been obliged to grant it, save only had the prosecution withdrawn its proffer of the tape recordings. For reasons no doubt best known to Cockrell and his counsel, no continuance nor mistrial was sought. In such circumstances we have repeatedly held the accused on appeal procedurally precluded from complaining of the discovery violation. See, e.g., Cole v.State, 525 So.2d at 367-68.
CONVICTION OF SALE OF LESS THAN AN OUNCE OF MARIJUANA, SECOND OFFENSE, AND SENTENCE OF SIX YEARS IMPRISONMENT AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.
[1] This conversation will become significant in light of the question regarding the tape recording to be discussed below.
[2] In a case such as this, the prosecution's duty in discovery does not vary when the evidence is offered in rebuttal. SeeBoches v. State, 506 So.2d 254, 262 (Miss. 1987); Swindle v.State, 502 So.2d 652, 656 (Miss. 1987); Johnson v. State,491 So.2d 834, 837 (Miss. 1986).
[3] Cockrell's counsel was less than perfect in the form in which he has preserved the point for appeal. All we have before us are counsel's assertions — at trial and here — as to what he could and could not hear. A fully developed record featuring sworn testimony is the preferred form in the premises.