604 So.2d 735 (1992)
Larry Clay GALLOWAY
v.
STATE of Mississippi.
No. 89-KA-1069.
Supreme Court of Mississippi.
July 1, 1992.
J. Winston Brown, Rex F. Sanderson, Houston, for appellant.
Michael C. Moore, Atty. Gen., Deirdre McCrory, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, C.J., and ROBERTSON and SULLIVAN, JJ.
*736 ROBERTSON, Justice, for the Court:

I.
Today's appeal arises from a fatal shooting in rural Chickasaw County, the issue at trial whether it was murder or an accident. Our present concern is procedural and centers on a surprise witness who dynamited the defense's accident theory. The problem is the prosecution had not as it ought disclosed the witness in pre-trial discovery.
We reverse and remand.

II.
The night of January 17, 1989, Deborah Owens was at home near the Egypt Community south of Okolona with her husband, David, and her daughter, Melissa Whitt. At approximately 9:30 p.m., after Deborah and David were "in bed asleep," they received a visit from Larry Galloway, also known as "Pancho." David and Galloway talked for a few minutes, then Galloway left.
David returned to bed, and the couple went back to sleep. "[R]ight at midnight," Deborah again heard "a big knock on the door." Deborah explained,
I was getting up out of the bed, I had one leg already out, I said somebody is out there. David jumped on me, he said damn, I wonder who it is now. I could tell it was the same vehicle still there.
* * * * * *
David ... put his pants on and runs [sic] in the living room and barely has time to get the front door open. I heard a shot. At that moment, David screams [sic] out in a cry. He said shit, Pancho man, why me.
David crawled down the hall to Melissa's room. Deborah soon found her husband dead on the floor of her daughter's bedroom.
Deborah and Melissa told the jury of the fateful evening, and in some detail, and their perceptions and memories strongly suggest murder. Anthony Stalnaker, an independent witness for the prosecution, substantially corroborated the homicide theory.
Dr. Thomas McGee, the pathologist who had performed the autopsy, testified that the bullet, a .357, had entered Owens' left chest, passed through both ventricles of his heart and his left lung, and exited. The resulting wound caused Owens' death.
Galloway admits he was on the scene, admits it was his gun that shot and killed Owens, but claims the whole thing was an unfortunate accident. He says he intended to give the gun to Owens in exchange for marijuana, and it accidentally discharged when Owens "grabbed it... ."
According to Galloway, he and Owens had been acquaintances for some ten to twelve years. On the day in question, Galloway put in a normal workday at his place of employment, Twentieth Century, and spent the early part of the evening with some friends drinking beer, mixed drinks, and smoking "a joint." Later that evening, Galloway decided he wanted some more marijuana. Owens had told him that he, Owens, had some. Galloway, together with Ruby Earnest and Junior Hamilton, drove to Owens' home some ten miles below Okolona and arrived at about 9:00 o'clock. Galloway asked Owens for some marijuana and said, "Can you front me an ounce 'til Friday?" Owens refused. Galloway then said, "I got three guns I can trade for some pot." Owens purportedly replied he would have to see the guns. Galloway then left, drove to his home, which was some distance away back in Okolona.
Near midnight Galloway returned, this time with Ruby Earnest only. Galloway had three guns with him, two shotguns and a .357 Magnum. He approached the door, and Owens greeted him.
And I was handing him the pistol. He grabbed it, slammed it up against the door twice, and the pistol went off ... When David grabbed the gun, I don't know if he pulled the trigger or I pulled the trigger... It happened so fast. He slammed it up against the door.
The jury, however, was unimpressed, and we worry whether this may have been in material part because of the testimony of *737 Floyd Presley, Jr., the undiscovered witness, whose appearance we address below. For the moment, the jury found Galloway guilty of murder, Miss. Code Ann. § 97-3-19(1)(a) (Supp. 1988). The Circuit Court sentenced Galloway to life imprisonment. Miss. Code Ann. § 97-3-21 (Supp. 1988). This appeal has followed.

III.

A.
Galloway complains the Circuit Court erred when it overruled his objection to the testimony of thirty-year-old, three-time loser, Floyd Presley, Jr. As grounds for his objection, Galloway says the prosecution did not tell of Presley in pre-trial discovery. Rule 4.06(a)(1), Miss.Unif.Crim. R.Cir.Ct.Prac. (1979, as amended). There is no question but that some five months before trial the defense made a comprehensive discovery request. The prosecution concedes this below, as here, admitting Presley's name was not disclosed. Nevertheless, the Circuit Court allowed the prosecution to present Presley on its case in chief.
Presley's testimony was not without consequence. He told the jury that, several months before the trial, Galloway had approached him and
just told me to contact Debbie Owens, if I seen her, tell her if she would say it was an accident, she would get more money.
The testimony refers to the accidental death/double indemnity provision of life insurance policies David Owens owned at the time of his death. It attacks Galloway's defense at its core and, if believed, destroys that defense, such as it was.

B.
We begin with whether Galloway has procedurally preserved the point. To that end, we begin with the rule itself. Rule 4.06(i) reads, in relevant part:
If during the course of trial, the prosecution attempts to introduce evidence which has not been timely disclosed to the defense as required by these rules, and the defense objects to the introduction for that reason, the court shall act as follows:
(1) Grant the defense a reasonable opportunity to interview the newly discovered witness, to examine the newly produced documents, photographs or other evidence; and
(2) If, after such opportunity [to interview the witness], the defense claims unfair surprise or undue prejudice and seeks a continuance or mistrial, the court should, in the interest of justice and absent unusual circumstances, exclude the evidence or grant a continuance for a period of time reasonably necessary for the defense to meet the non-disclosed evidence or grant a mistrial.
The rule codifies expressions in cases such as Holland v. State, 587 So.2d 848, 866-67 (Miss. 1991); Dennis v. State, 555 So.2d 679, 682 (Miss. 1989); Kelly v. State, 553 So.2d 517, 520-21 (Miss. 1989); Shook v. State, 552 So.2d 841, 850 (Miss. 1989); Houston v. State, 531 So.2d 598, 611-12 (Miss. 1988); Cole v. State, 525 So.2d 365, 367-68 (Miss. 1987).
Rule 4.06(i) has been carefully crafted and balanced to accommodate two compelling but often competing interests: assuring, on the one hand, that the court and jury have the benefit of all relevant evidence, and, on the other, assuring fairness and reasonable advance disclosure to the defendant. See McCaine v. State, 591 So.2d 833, 836 (Miss. 1991); Holland v. State, 587 So.2d at 867; and Ryan v. State, 525 So.2d 799, 802 (Miss. 1988); Box v. State, 437 So.2d 19, 21 (Miss. 1983).
When Presley was called, Galloway objected. Referring implicitly to the rule, defense counsel fumbled:
[T]here are certain conditions before one [an "undiscovered" witness] can be used, a continuance granted, and I want the defense to investigate, but in this case they are offering a separate offense [suggesting Presley's testimony would charge Galloway with "a separate offense"].
After a further colloquy, the Court noted the possibility of a continuance.

*738 Mr. Sanderson, I did not hear the motion to continue. You indicated the procedure for the Court at this time, and I believe that is correct.
Defense counsel replied:
My objection is just to be clear,
* * * * * *
I object to the witness being called on, and secondarily, that if the witness is permitted to be called, we think we would have a motion for continuance on the case.
Defense counsel then called to the Court's attention that Presley had prior felony convictions of grand larceny, burglary and larceny of a dwelling and added:
Certainly, if this witness is going to testify to anything as damning as indicated by the prosecutor, we should be permitted to find out what other crimes he's been involved in, and offer these... .
Moments later, counsel added:
I want to know his whole background if he is going to testify on something as serious as this.
The Court then overruled the defense objection to exclude Presley altogether and allowed the defense a fifteen minute recess within which to interview the witness.[1] One of the prosecuting attorneys offered to attend the interview, an offer Presley accepted and the Court allowed, all over defense counsel's vehement protests.[2]
Upon returning from the interview, defense counsel stated:
Your Honor, we again interpose an objection to the use of this witness, he is unable to give, apparently, dates, times, places, and people, as such. We object to his testifying at all.
Galloway did not restate his motion for a continuance. The objection was overruled,[3] and Presley took the stand.
We are told that in this Galloway did not jump through a procedural hoop the rule demands. After his interview with Presley, an interview conducted under less than ideal circumstances,[4] Galloway's counsel failed to use the magic words "a continuance or mistrial." To be sure, counsel asked for a continuance, but he may have done so prematurely. The rule contemplates the request after interviewing the proffered witness. Counsel made his request before, though arguably "and secondarily, that if the witness is permitted to be called," etc., meaning counsel was giving the Court advance notice he would, in any event, want a continuance. The question is whether Galloway purchased his ticket so far in advance it was no longer good when the train came by. The prosecution concedes the opportunity for a continuance or mistrial was available to Galloway, but says the rule said he had to ask for it after the initial opportunity to interview the witness.
We are often presented discovery failures where the defendant made no request for continuance. We have often enforced waivers in such cases. See, e.g., Roberson v. State, 595 So.2d 1310, 1316 (Miss. 1992); *739 Holland v. State, 587 So.2d 848, 868 (Miss. 1991) (objected too late); Willie v. State, 585 So.2d 660, 675 (Miss. 1991); Lanier v. State, 533 So.2d 473, 378 (Miss. 1988); Shaw v. State, 521 So.2d 1278, 1281 (Miss. 1987); Cole v. State, 525 So.2d 365, 367 (Miss. 1987), and Cabello v. State, 471 So.2d 332, 343 (Miss. 1985). None of those cases arose on today's facts  an (arguably) premature motion for continuance. In this sense, today's is a question of first impression.
We emphasize step one  Rule 4.06(i)(1)  is important to the process. The Court expects counsel in good faith to interview the witness or examine the evidence to the end that surprise may be cured and the evidence used. Moreover, the defendant should not be allowed to have his cake and eat it, too. Rule 4.06 imports no per se rule of inadmissibility. If on balance defendant is of the opinion that he has been unfairly surprised by the prosecution's undiscovered evidence, the rule requires he affirmatively request a continuance. After he has been allowed a reasonable opportunity to examine the evidence or to interview the witness, defense counsel must make a decision. The trial may otherwise have progressed to his satisfaction. He may feel that a reasonably favorable jury has been seated. For these or other reasons, at the time the evidence in question is offered, the defense may feel on balance he should proceed. He may have concluded that the prejudice likely to result from unfair surprise is outweighed by good breaks he has gotten on other aspects of the trial. Rule 4.06(i) accepts the premise that, as a matter of sound trial tactics, defense counsel, after his recess to acquaint himself with the new evidence, may rationally eschew moving for a continuance.
The question boils down to whether Galloway's counsel abandoned his earlier request and acted so that the rule compels that his right to a continuance be deemed waived. The answer turns on situation sense, not legal formalisms, on a number of points: (a) whether counsel, having asked a continuance and having said he wanted to inquire into Presley's background, in some way suggested post-interview his withdrawal of his technically premature request; (b) whether the interview may reasonably be seen as having enabled counsel to cure the surprise, or (c) on whether counsel's silence may have been deliberate, a sandbagging, if you will.
Some surprise evidence by its very nature may not be cured summarily. In the case of surprise testimony such as confronted Galloway, counsel need a reasonable opportunity to explore the witness' background and character. Presley's unsavory legal history makes this particularly appropriate. While Presley was clear on his substantive punch line, it appears his memory of details of time, place and manner left much to be desired. Filling such gaps is among the more legitimate reasons why one needs a continuance. These are the concerns defense counsel noted as he explained his plight in chambers. They are his articulation of the "unfair surprise" and the "undue prejudice" Rule 4.06(i)(2) speaks of. These are the reasons why from this record, when the defense team went out to interview Presley, there could have been no reasonable doubt in anyone's mind, if the Court did not exclude the witness altogether, Galloway wanted a continuance.
On that reading of Rule 4.06(i) that best fits and justifies it, Galloway's request of a continuance remained procedurally alive, so that the Circuit Court erred in not granting it "for a period of time reasonably necessary for the defense to meet the non-disclosed evidence." Rule 4.06(i)(2); see West v. State, 553 So.2d at 18-19. The "interests of justice" clearly suggest such. No "unusual circumstances" countervail.

C.
Even so, the prosecution seeks affirmance. They suggest they did not know of Presley until Deborah Owens told of him the Monday before trial, but this is of no moment. See Box v. State, 437 So.2d at 21. Upon receipt of a discovery request, a party  here, the prosecution  has a duty of reasonable diligence in discovering itself, *740 that within the scope of the request, followed by timely disclosure to the other side. The prosecution had a continuing duty to make discovery of "additional material or information which is subject to disclosure" which a party becomes aware of "subsequent to compliance with these rules or orders pursuant thereto." See Rule 4.06(e). We have consistently enforced this continuing duty to make discovery. See Stewart v. State, 512 So.2d 889, 891-92 (Miss. 1987); Foster v. State, 484 So.2d 1009, 1011 (Miss. 1986); Acevedo v. State, 467 So.2d 220, 224 (Miss. 1985). In West v. State, 553 So.2d 8 (Miss. 1989), we reasoned:
That the prosecution fails to unearth certain evidence until the last minute hardly eviscerates the prejudice to a defendant caught unaware, nor the necessity for reversal where the circuit court denies the defense request for a reasonable continuance.
West, 553 So.2d at 17. That the prosecution may originally have had no intention of using Presley is similarly of no moment. Dotson v. State, 593 So.2d 7, 12 (Miss. 1991).
Sensing this, the prosecution next offers the rather lame defense that Galloway "opened the door" with cross-examination of Deborah Owens.[5] The point is specious, for the cross-examination merely asks Deborah whether, first, she, and, second, Larry Galloway had received any insurance benefits from the death of Owens. This in no way suggested the need for an explanation or elaboration such as Presley offered, nor left the prosecution exposed had one not been offered. Contrast Cockrell v. State, 566 So.2d 1243, 1245 (Miss. 1990); and Gallion v. State, 517 So.2d 1364 (Miss. 1987).
Finally the prosecution argues harmless error. We do not say there can never be a harmless discovery error.[6] We remind one and all of the realities of the phenomena we address. In many discovery cases neither this Court nor the trial court is in a position to decide that a tardy disclosure of witnesses or evidence has or has not resulted in unfair surprise, or prejudice, to the defendant. Certainly this Court has only the cold record to read. That the record does not affirmatively reflect prejudice does not prove there has been none. Where there is prejudice, it often will arise from matters not of record, that by their very nature cannot be in the record. The line of questioning defense counsel failed to pursue because he did not have time to prepare will not appear. The rebuttal witness who could have impeached the prosecution's surprise witness, but who was not found because the defense had no time to get out and search for him, will not be in the record. There are numerous other examples the experienced trial lawyer will readily call to mind. Our harmless error rule may not with justice be enforced on the assumption of a world that does not exist.
Our answer today is easy. Presley's testimony quite simply gutted the defense theory of the case. It was error that Galloway was not given fair advance notice thereof, nor reasonable opportunity to meet it. This error was anything but harmless.

IV.
In view of our holding on the discovery issue, we find it unnecessary that we address the other issues tendered on this appeal. We reverse and remand for a new trial on all issues.
REVERSED AND REMANDED.
*741 ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and PRATHER, SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.
HAWKINS, P.J., not participating.
NOTES
[1] While granting them much discretion, we have urged our trial judges that they not be "grudging" in allowing counsel the opportunity to interview or examine surprise witnesses or other evidence. See, e.g., Nixon v. State, 533 So.2d 1078, 1090 (Miss. 1987); Gray v. State, 487 So.2d 1304, 1314 (Miss. 1986). We repeat the urging.
[2] The legality or propriety of this latter part of the process is not before us. See Rule 28(a)(3), Miss.Sup.Ct.Rules.
[3] Rule 4.06(i)(2) empowered the Court with three options: (a) exclude the evidence, (b) grant a reasonable continuance or recess, or (c) declare a mistrial. The Court was well within its discretion not to exclude Presley altogether. His testimony was important to the search for the truth, if only that search be done with fairness to Galloway.
[4] In his brief, Galloway argues:

The 15 minute continuance granted by the Court was wholly insufficient for defense counsel to assess this surprise witness' proposed testimony and investigate and determine the reason and extent, if any, that this witness may have been motivated to give false testimony.
In addition to Presley's own troubles with the law  he told the jury he had "four or five" prior convictions  defense counsel on cross-examination attempted ineffectually to have Presley admit "he did or have gone with Debbie Owens." Presley answered, "I ain't never went with Debbie Owens."
[5] The said-to-have-been-door-opener is:

Q. Now Mrs. Owens, you collected the life insurance on David's life, right?
[Proceedings on objection omitted]
* * * * * *
A. Yes
Q. Did Larry Galloway get any insurance from your husband's death?
A. Not as I know of.
[6] See, e.g., Martin v. State, 592 So.2d 987, 989 (Miss. 1991); Carraway v. State, 562 So.2d 1199, 1204 (Miss. 1990); Fowler v. State, 566 So.2d 1194, 1198-1199 (Miss. 1990); Hall v. State, 546 So.2d 673, 677 (Miss. 1989); Dennis v. State, 555 So.2d 679, 682 (Miss. 1989); Wells v. State, 521 So.2d 1274, 1276 (Miss. 1987); Boches v. State, 506 So.2d 254, 262 (Miss. 1987); Buckhalter v. State, 480 So.2d 1128, 1129 (Miss. 1985).