**IN THE SUPREME COURT OF MISSISSIPPI**

**NO. 2003-CT-00045-SCT**

*JIM KINDRED, INDIVIDUALLY, AS WRONGFUL
DEATH BENEFICIARY, AND ON BEHALF OF THE
ESTATE OF DIANA KINDRED, DECEASED*

**v.**

*COLUMBUS COUNTRY CLUB, INC.*

**ON WRIT OF CERTIORARI**

| | |
|---|---|
| DATE OF JUDGMENT: | 09/05/2002 |
| TRIAL JUDGE: | HON. LEE J. HOWARD |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JIM WAIDE |
| | LUTHER C. FISHER |
| ATTORNEYS FOR APPELLEE: | JEFFREY DEAN LEATHERS |
| | MICHAEL D. GREER |
| | ORLANDO RODRIQUEZ RICHMOND |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | AFFIRMED - 09/08/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

¶1.     On July 15, 2000, Jim and Diana Kindred were married and drove through a storm in route to their honeymoon destination.  As they traveled past the Columbus Country Club a tree on the Country Club's property fell across the Kindred's car, fatally injuring Diana.  On November 15, 2000, Jim Kindred filed a wrongful death lawsuit in the Circuit Court of

Lowndes County, Mississippi, against Columbus Country Club alleging that the Country Club's negligence was the proximate cause of Diana's death. After a three-day trial, the jury found in favor of the defendant, and judgment was entered accordingly. Kindred appealed, and the Court of Appeals affirmed the judgment of the trial court. Kindred subsequently filed a petition for writ of certiorari with this Court which was granted by this Court.

**FACTS**

¶2. Kindred requests this Court to review the trial court's refusal to allow the testimony of James Traywick and its refusal to grant a new trial based on alleged intimidation of a witness. The facts, which were adequately stated in the Court of Appeals' decision, are as follows:

> ¶ 8. After both Kindred and the Country Club had concluded their cases, Kindred sought to call three witnesses in rebuttal, Cathy Bailey, James Traywick, and Jay Jordan, III. Kindred's desire to call Jordan was conditioned upon his being allowed first to call Bailey and Traywick. He stated to the court that if the court was not going to allow him to call Bailey and Traywick, then he did not want to call Jordan. Columbus Country Club noted that Jordan was on its list but that it had decided not to call Jordan. It offered no objection to Jordan being called by Kindred. The court refused to allow Bailey and Traywick to testify, and the testimony of all three witnesses was proffered.
>
> . . . .
>
> ¶ 11. Traywick testified that he and his boss, Danny Harrison cut up and removed one large limb which had fallen from the tree in question. He stated that when the large limb fell from the tree, it cracked or damaged two other limbs which he and his boss cut down. He also testified that the tree was hollow and black, "black and yellow." When asked if he knew whether any plans were made at that time to have the tree cut, he responded, "Just what I was told. My boss went in to tell them it was cleaned up and told them it needed to come down, that it was going to hurt somebody cause it was hollow." Finally, Traywick testified that he had forgotten about his involvement with the tree until he saw a report in the Sunday's paper that the trial was about to begin. He stated that he came to the courthouse because he thought it was the right thing to do.

2

¶ 12. In arguing that he should be allowed to present the rebuttal witnesses, Kindred, through his attorney, advised the court that he had no prior knowledge of these witnesses, that witness Traywick read about the trial and just appeared at the courthouse . . .

¶ 13. As noted, the trial judge refused to allow the witnesses's testimony. His basis for denying the testimony was that the witnesses had not been disclosed to the defense prior to trial and were not listed on the pretrial order. Specifically, the trial judge remarked, "[T]hese names were not disclosed. They've not been deposed. They're not in the pretrial order, and people don't walk in off the street and testify in Court."

. . . .

The allegation of intimidation centers on questions about a secret indictment that one of the Country Club's attorneys asked witness Tyrone McCoy about during a recess in the trial just before McCoy testified . . .

\* \* \*

Kindred asserts that one of the Country Club's lawyers told McCoy that McCoy might get locked up if he testified. Notwithstanding the warning, McCoy testified anyway; however, he testified that he was afraid.

*Kindred v. Columbus Country Club, Inc.,* 2004 WL 2439659, \*1-2 & 4 (Miss. Ct. App. 2004).

¶3.     In his affidavit regarding his alleged intimidation by one of the Country Club's lawyers,

Orlando Richmond, McCoy stated:

> [He] told me that I had some "charges" pending against me and that they could be introduced during the trial. I asked what he meant and he said that I could get "locked up" if I testified. I told Mr. Richmond that I did not have any charges pending against me. He said that I did, that I had two drug related charges pending against me . . . . I asked him when I was supposed to have gotten the charges and Mr. Richmond said that one of them was filed in 1988 and the other in 1992. I told Mr. Richmond that I had not been in any trouble in fifteen years and that I felt like I had to testify about what I knew about the tree. Mr. Richmond told me that if I testified, I could be served and arrested in the courtroom.
> After being told about the pending charges, I was afraid . . . . I was called to testify and did testify but I kept thinking about what the Country Club attorneys

had told me and the thought that I could be arrested never left my mind. I was scared but tried not to show it.

After testifying, I left the courthouse and walked home . . . . Soon after my arrival, four police cars, two county and two city, pulled up in front of my house. Several officers got out of the cars, two went to the back of my house and two came to the front. . . . When I asked the officers why I was being arrested, they said I was charged with sale of cocaine and RICO. I asked when these charges were filed against me, and they said "1988 and 1992."

McCoy was then arrested and later released on bond.

## ANALYSIS

I.      **Whether the trial judge erred in refusing to allow the testimony of James Traywick**.

¶4.     "The standard of review for the admission or exclusion of testimony is abuse of discretion." *City of Jackson v. Estate of Stewart ex rel. Womack*, 2005 WL 1870174, *4 (Miss. 2005). Kindred argues that the trial court erred in excluding Traywick's testimony. He argues that Traywick's credibility should not have been for the judge to decide, but should have been a jury issue.

¶5.     The Court of Appeals stated the following with respect to Traywick's testimony:

¶ 16. We do not believe that under these facts the trial judge abused his discretion in not allowing the witnesses to testify. First, it is only an assumption on Kindred's part that the witness, Traywick was telling the truth. He may have been, but there is no evidence, other than Traywick's testimony, that Traywick and his boss cut limbs from the tree in question and informed the Country Club that the tree needed to be taken down. It seems to me that the trial judge's suspicion of Traywick was not without reasonable basis, given the turn of events during the trial and Traywick's almost magical appearance thereafter. If Traywick was mistaken about cutting the limbs from the tree, the Country Club certainly would not have had any basis for disclosing his identity to Kindred.

*Kindred*, 2004 WL 2439659 at *3.

4

¶6.    The Court of Appeals, in holding that the trial court did not err, relied heavily on the fact that there was no evidence that Traywick was telling the truth, other than his own testimony. However, this Court has repeatedly held that decisions as to the weight and credibility of a witness's statements are the proper province of the jury, not the judge. *Blake v. Clein*, 903 So. 2d 710, 723 (Miss. 2005); *Doe v. Stegall*, 757 So. 2d 201, 205 (Miss. 2000). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A mere "suspicion" that a witness is not truthful, does not warrant exclusion, on that basis alone.

¶7.    Kindred further argues that the trial court erred when it refused to allow Traywick's testimony on the basis that Traywick had not been disclosed as a witness prior to trial and that he was not listed on the pretrial order. Kindred argues that he could not have given the Country Club notice that Traywick would testify, because Traywick was never revealed by the Country Club in its answers to the plaintiff's interrogatories as someone who had trimmed, cut or removed the tree. Specifically, the trial judge remarks in refusing Traywick's testimony were as follows: "These names were not disclosed. They've not been deposed. They're not in the pretrial order, and people don't walk in off the street and testify in Court."

¶8.    While it is true that Traywick's name was not disclosed in pre-trial discovery, it was the Country Club, not Kindred, which had a duty to disclose Traywick, if in fact Traywick was known by the Country Club to have cut, trimmed, or inspected the tree. "Once an opponent requests discoverable material, an attorney has a duty to comply with the request . . . ." *City of Jackson v. Internal Engine Parts Group, Inc.*, 903 So. 2d 60, 65 (Miss. 2005). Kindred's first set of interrogatories to the Defendant included the following request:

5

> **INTERROGATORY NO. 9**: Please state the name(s) and address(es) of all persons, entities, companies and/or corporations who have been consulted, contacted, employed or contracted to view, inspect, trim, and/or cut and remove trees located on the Defendant's property, the date(s) and description of service, and the name(s), address(es) and telephone number(s) of every person or persons who did so for or on behalf of Defendant for the past ten (10) years.

The Country Club's response to this question was that it was unknown. It was this evasive answer by the Country Club that resulted in Traywick's surprise appearance. An "unknown" response might cause one to believe that no person or company was consulted, contacted, employed, or contracted to view, inspect, trim, and/or cut and remove trees located on the Defendant's property. The Country Club should have either 1) made a reasonable and diligent inquiry of its business records whether such entity existed, and then answered either "none" or have identified the entity with relevant knowledge, if one existed or 2) could have chosen to utilize M.R.C.P. 33(d) and given Kindred a reasonable opportunity to examine business records that might have contained such information. M.R.C.P. 26-37. Nothing in the record reflects that Kindred knew of Traywick's existence before he appeared at the courthouse during trial.

¶9. This Court has long held that the rules of discovery are to prevent trial by ambush. *Busick v. St. John*, 856 So. 2d 304, 320 (Miss. 2003). Procedural rules are "designed to assure to the maximum extent practicable that cases are decided on their merits, not the fact that one party calls a surprise witness and catches the other with his pants down." *Broadhead v. Bonita Lakes Mall, Ltd. P'ship*, 702 So. 2d 92, 102 (Miss. 1997).

¶10. Where as here, a person claiming relevant evidentiary knowledge shows up at trial, both sides must be given an opportunity to learn what the surprise witness knows about the case.

6

"In the case of surprise testimony. . . counsel need a reasonable opportunity to explore the witness' background and character." *Galloway v. State*, 604 So. 2d 735, 739 (Miss. 1992). This Court has stated that, "[e]xclusion of evidence is a last resort. Every reasonable alternative means of assuring the elimination of any prejudice to the moving party and the proper sanction against the offending party should be explored before ordering exclusion." *Holladay v. Holladay,* 776 So. 2d 662, 671 (Miss. 2000). The trial judge in the case sub judice when faced with this dilemma inquired of plaintiff's counsel, "do you want to continue this case . . .," but Kindred did not request a continuance. The court said the following with respect to allowing the surprise witnesses testimony:

> I'm not going to allow it. These are two witnesses– **do you want to continue the case** and mistry it and give them a chance to depose these people? I will do that or consider it, but the that's – there is no that I'm going to allow a witness to appear at the eleventh hour and testify in rebuttal without their names having been disclosed in discovery.

(emphasis added). However, Kindred failed to seek the offered relief and proceeded with only a proffer, but did not move for a continuance. Subsequent to the proffer of Traywick's testimony, two other rebuttal witnesses testified, and one additional motion regarding McCoy was heard. Prior to finally resting, the following exchange occurred between Kindred's attorney and the trial court:

> BY MR. WAIDE: Your Honor, the purpose of this inquiry, your Honor indicated earlier that you would consider granting a continuance.
> In view of your Honor's ruling on the motion – that rebuttal evidence [sic] and I just needed a minute to confer with my client to determine whether he wants me to ask for one or not.
> BY THE COURT: No. No. No. I'm not going to continue the matter.
> There may be–if there's a continuance required it's going to be a mistrial involved in this case and I would have to address those issues when they were presented to me.

7

BY MR. WAIDE: All right, sir.
BY THE COURT: But I'm not going to continue the matter just–
BY MR. WAIDE: I understand. All right. Your Honor, in that event the plaintiff finally rests.

¶11. The court stated it would not then continue the case, but would consider a motion for mistrial. However, the plaintiff elected to rest and did not move for a mistrial.

¶12. This Court has often enforced waivers when there has been no request for a continuance. *Id.* at 738 citing ***Roberson v. State***, 595 So. 2d 1310, 1316 (Miss. 1992); ***Holland v. State***, 587 So. 2d 848, 868 (Miss. 1991); ***Willie v. State***, 585 So. 2d 660, 675 (Miss. 1991). Because Kindred did not request a continuance and/or a mistrial after the judge first offered the plaintiff an opportunity to move for a continuance and then to move for a mistrial, this Court finds that Kindred waived his right to complain of the exclusion of the witnesses. Accordingly, the trial court properly excluded Traywick and the other witnesses. This issue is without merit.

> **II.** **Whether the trial court erred when it failed to grant a new trial based on allegations of intimidation of a witness.**

¶13. "A denial of a request for new trial will be reversed only when such denial amounts to an abuse of that judge's discretion." ***Dupree v. Plantation Pointe, L.P.***, 892 So. 2d 228, 232 (Miss. 2004). After the trial had been concluded, on September 12, 2002, Kindred filed his motion for new trial alleging the following with respect to intimidation of the witness:

> 1) A deputy clerk informed Columbus Country Club's counsel that an indictment had been returned and a capias issued for Plaintiff's witness, Tyrone McCoy. This secret information was furnished to the Country Club's counsel prior to service of the capias, and at a time when the indictment was required by law to be kept secret. The clerk's furnishing of a secret indictment to defense counsel involves the Clerk, as an arm of the Court, in assisting one of the parties to the

8

litigation. This denies Plaintiff an impartial forum as required by the due process clause of the Mississippi and United States Constitutions.

2) Furnishing information to a private party, about a secret indictment prior to the indictments having been served upon the accused, violates Mississippi law and offends public policy.

3) Upon receiving secret information from a clerk that a capias and indictment had been returned against the witness, Tyrone McCoy, agents of the Columbus Country Club utilized said information to intimidate Tyrone McCoy in an attempt to prohibit him from testifying or to affect his testimony. This conduct amounts to intimidating the witness and is per se grounds for a new trial.

Defendants denied these allegations, and a hearing was held on November 22, 2002.

¶14. At the hearing, Kindred's attorney called only one witness to the alleged intimidation, Tyrone McCoy. McCoy's testimony including the following on direct examination:

Q. Tell me about — what did Mr. Richmond talk to you about?

A. Uh, pending charges.

Q. What – What – just tell me what you said and what he said.

A. All right. Uh, he– he told me that, uh, did I know I had some charges pending against me. I – I told him, no I don't have any charges, and, uh, I asked him what kind of charges. He told me I had a cocaine charge and a RICO charge, and that they might be introduced during the trial and I might get locked up if I testified, and I told him I – I was going to testify anyway.

Q. Did– did y'all have any discussion about how old those charges were?

A. Yeah. I asked him, uh, when I supposed to been got them. He told me one of them was in eighty-eight and the other one was in ninety-two.

Q. The charges?

A. Yeah.

Q. Did – did he have any documents or papers back there with him about the charges?

9

A. Yeah. He, uh – he was reading off a . . . piece of paper with the charges on it, and I can see eighty-eight and ninety-two.

Q. Did, uh – aft – after he talked to you, you went ahead and testified?

A. Yes, I did.

Q. You didn't tell me about that con – what he told you before you testified, did you?

A. No, I didn't.

Q. Why did you – why didn't you tell me at that time?

A. I... don't really know. I – you know what I'm saying, I was scared at the time, you know. I really didn't know what to do, you know.

***

Q. Did – would you tell Judge Howard how it made you feel to be asked about the pending charges and be told that you might be locked up?

A. Well, one – one thing I was scared.

Q. You were scared?

A. Yeah.

Q. Why did you go ahead and testify then?

A. ... I knowed it was the right thing to do.

The cross-examination of McCoy included the following:

Q. Mr. McCoy, you in fact testified at the, uh– the trial, did you not?

A. I did.

***

Q. And you testified truthfully under oath about that?

A. Yeah.

10

Q. Okay. Didn't change your testimony at all about that?

A. No.

Q. Okay. And you testified truthfully because you believe that was the right thing to do. Correct?

A. Yeah.

¶15.    At the conclusion of the hearing, the trial court found the following:

> There are some issues that have been raised concerning the Court's rulings in certain matters that y'all have addressed in both your motion and brief and responses that I've got to take up, but right now there are some observations that must be made by the Court in the record because without them I think the record in any reviewing court would be left in the dark.    The first issue I'd like to address is contained in the plaintiff's motion for a new trial, Paragraph Roman Numeral I.    Allegations are made in paragraph I that secret information was furnished to the country club's counsel prior to service of a capias by the clerk of the circuit court in Lowndes County, Mississippi.    That is an allegation that is not supported by the proof and the evidence. . .
> ***
> The second one was . . . that this furnishing of information to a private party about a secret indictment about the indictments prior to them having been served violates the law and offends public policy.    There is no evidence or testimony whatsoever that that was done, and the allegation is in the motion for a new trial that is in the Court's opinion not supported by any proof or evidence.
>
> Number three assumes that secret information from a clerk was received by someone involved in here that a capias and indictment had been issued.    Well, and that it was done to intimidate one, Tyrone McCoy, to prohibit him from testifying.    The Court finds that there's no proof or evidence to support that allegation.
> ***
> The Court has had the occasion to observe Mr. McCoy testify during the trial of this case, and on the motion to order a new trial in this case and in the motions to dismiss the indictments against him in the criminal matters.    I observed him, I heard his testimony, and heard his responses to the questions, and I cannot say what worth, weight and credibility that a jury would assign to his testimony because that is their decision to make, but in ruling on this motion **it is my decision to determine the weight, worth and credibility to give to his testimony, and the Court gives none.**

(Emphasis added).

¶16. This Court condemns and abhors improper intimidation tactics as alleged by Kindred. If sufficient and credible evidence existed of intimidation, this Court's ruling would be otherwise. However, Kindred called only one witness to testify to the alleged intimidation of McCoy. The trial judge found that this testimony was not credible. There being no other witnesses, this Court is without sufficient evidence to grant a new trial. Finding that the denial of the new trial was not an abuse of discretion, this Court affirms the denial of the motion for new trial. *Dupree*, 892 So. 2d at 232.

## CONCLUSION

¶17. This Court finds that Kindred waived his right to complain of the exclusion of witnesses. Furthermore, this Court finds that the trial court did not abuse its discretion in denying Kindred's motion for new trial. Accordingly, the judgments of the Court of Appeals and the circuit court are affirmed.

¶18. **AFFIRMED.**

**SMITH, C.J., AND CARLSON, J., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY. COBB, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, P.J. DIAZ, EASLEY, AND DICKINSON, JJ., NOT PARTICIPATING.**

**COBB, PRESIDING JUSTICE, DISSENTING:**

¶19. Although I agree with much of the majority opinion, I must respectfully disagree with its conclusions regarding both the exclusion of James Traywick's rebuttal testimony and the handling of Tyrone McCoy's testimony.

*Traywick's Testimony*

12

¶20. The majority correctly acknowledges that the trial judge erred in taking his personal opinion into account as to the weight and credibility of Traywick's testimony. It also correctly acknowledges that it was Columbus Country Club, not Kindred, which had the duty to disclose Traywick in pretrial discovery in response to Kindred's interrogatory. However, the majority then determines that because Kindred's attorney did not move for a continuance when given the opportunity, he waived his right to complain of the exclusion of Traywick's testimony on appeal. On this point I part company with the majority.

¶21. When Kindred's lawyer was offered the opportunity by the court "to continue the case and mistry it and give them a chance to depose [Traywick]", he elected not to move for a continuance, and instead made an offer of proof with Traywick's testimony. After that proffer, two other rebuttal witnesses testified before the jury, and one additional motion regarding McCoy was heard. Then just prior to finally resting, Kindred's lawyer conferred briefly with his client and the following exchange occurred:

> BY MR. WAIDE: Your Honor, the purpose of this inquiry, your Honor indicated earlier that you would consider granting a continuance. In view of your Honor's ruling on the motion – that rebuttal evidence [sic] and I just needed a minute to confer with my client to determine whether he wants me to ask for one or not.
> BY THE COURT: No. No. No. I'm not going to continue the matter. There may be–if there's a continuance required it's going to be a mistrial involved in this case and I would have to address those issues when they were presented to me.
> BY MR. WAIDE: All right, sir.
> BY THE COURT: But I'm not going to continue the matter just–
> BY MR. WAIDE: I understand. All right. Your Honor, in that event the plaintiff finally rests.

¶22. In my view, this was not a waiver in the true sense of the word. But even if we presume, arguendo, that it was a waiver, that still does not eliminate additional concerns.

13

¶23. The majority opinion states that "[t]his Court has often enforced waivers when there has been no request for a continuance" and cites four cases to illustrate this. However, the cases cited by the majority can easily be distinguished from the case sub judice. The majority cites *Galloway v. State*, 604 So. 2d 735, 738 (Miss. 1992), *Roberson v. State*, 595 So. 2d 1310, 1316 (Miss. 1992), *Holland v. State*, 587 So. 2d 848, 868 (Miss. 1991), and *Willie v. State*, 585 So. 2d 660, 675 (Miss. 1991). All four of these cases are old criminal cases, and the waiver issues in those cases were dealt with under the former Uniform Criminal Rules of Circuit Court Practice (UCRCCP) Section 4.06 which, inter alia, codified the *Box*[1] procedure. In 1995, the current Uniform Rules of Circuit and County Court Practice (URCCC) were adopted. Interestingly, although the new URCCC combined the rules of both criminal and civil practice in the circuit courts, the rule regarding discovery remained in that portion of the rules which are designated as "applicable only to criminal proceedings". See URCCC 6.01. The former 4.06 provisions are now found in Rule 9.04, which clearly states what the "prosecution must disclose to each defendant" and what is required "[i]f the defendant requests discovery under this rule."[2]

---

[1] See *Box v. State,* 437 So. 2d 19 (Miss.1983).

[2] URCCC 9.04 reads in pertinent part:
I. If during the course of trial, the prosecution attempts to introduce evidence which has not been timely disclosed to the defense as required by these rules, and the defense objects to the introduction for that reason, the court shall act as follows:

   1. Grant the defense a reasonable opportunity to interview the newly discovered witness, to examine the newly produced documents, photographs or other evidence; and

   2. If, after such opportunity, the defense claims unfair surprise or undue prejudice and seeks a continuance or mistrial, the court shall, in the interest of justice and absent unusual circumstances, exclude the evidence or

14

¶24. Certainly the criminal cases cited by the majority cannot apply in this, a wrongful death case. However, even if we were to set aside the fact that the basis for deciding these criminal cases cannot be applied in this case, there remain additional distinguishing circumstances between the facts of those cases and the case sub judice.

¶25. In the first place, this issue has been presented, argued, and decided as though there was a discovery violation by the plaintiff, when, in fact, the issue we have before us is determination of the proper procedure to be followed when, in the midst of a trial, an unknown, surprise witness comes forward and offers to testify as a fact witness. Traywick was totally unknown to the plaintiff prior to the day he showed up at the courthouse, on the fourth day of the trial. The rules and cases cited and argued at trial and on appeal, all address how to proceed when there has been a true discovery violation, in which a party with knowledge of a potential witness fails to properly and timely disclose that potential witness. I have found no case in our state, and only a few from other jurisdictions, which address even a somewhat comparable situation as in the present case.

¶26. Should this Court decide to adopt a rule to be applied in cases where a previously unknown witness appears and offers to testify on behalf of either party, then it certainly has the authority to do so. In my view, it should not make the mistake of applying, in this civil case before us, a rule which governs failure to disclose a known witness (or other evidence) in a criminal case.

---

grant a continuance for a period of time reasonably necessary for the defense
to meet the non-disclosed evidence or grant a mistrial.
        * * *
The court shall follow the same procedure for violation of discovery by the
defense.

15

¶27. That being said, it is necessary to point out the fallacies of the procedure which was followed. In the four criminal cases cited by the majority, the party (the defendant) who did *not* want the testimony admitted was found to have waived the right to complain of the exclusion on appeal for failure to move for continuance. In the present case, the majority suggests that Kindred's lawyer should have moved for a continuance in order to give the "other side" a chance to depose Traywick. But why should *he* be required to move for a continuance so that counsel for the Country Club could depose a witness that *they* failed to disclose in pretrial discovery? That is illogical. Further, later in the trial when it appeared that Kindred's lawyer might want move for a continuance, the trial court made it ultimately clear that there would be no continuance.

¶28. Kindred simply wanted to have Traywick's testimony admitted into evidence. When that request was denied, Kindred's attorney acted properly by proffering Traywick's testimony outside the presence of the jury. He should not have been required to move for a continuance, further delaying his client's interests in litigation that had commenced more than two years earlier.

¶29. It is true that when initially offered the opportunity, Kindred's attorney did not move to continue or mistry this case. However, the Country Club's attorney did not move for a continuance either. It would seem that if the attorneys for the Country Club really *needed* to depose Traywick in order to obtain some basis for impeachment, then *they* would have taken the trial court up on its offer to continue or mistry the case. Though trial strategy probably played a part in their decision, the attorneys for the Country Club did not move for a continuance, and it should not have been Kindred's responsibility to do it for them.

¶30. In my view, it was inherently unfair for the trial court to refuse to allow Traywick to provide rebuttal testimony. Kindred had already completed his case in chief, and three of the Country Club's witnesses had testified, when the court recessed at the end of the third day of the trial. It is undisputed that Kindred did not know about Traywick until the fourth day of the trial. Furthermore, had Columbus Country Club accurately responded to Kindred's discovery requests, Traywick would have been known to, and certainly listed as a witness by, Kindred. In my view, the trial court punished Kindred for the Country Club's oversight. Kindred should have been allowed to call Traywick as a rebuttal witness, and the jury (rather than the trial court or this Court) should have been allowed to judge his credibility.

*McCoy's Testimony*

¶31. A careful review of the transcript regarding Kindred's witness, Tyrone McCoy, reveals that the Country Club's lawyer asked him on cross-examination whether he was being paid to testify. McCoy denied being paid. When Kindred's lawyer demanded to know the good faith basis for the question, none was provided, and the trial court refused to require one to be provided.

¶32. The mere asking of some questions can cause prejudice, regardless of the answer. This Court has held that a lawyer must have a good faith basis or reason to ask such questions. *See, e.g.*, **Flowers v. State**, 773 So. 2d 309, 326 (Miss. 2000) ("counsel must have a good faith basis for any question asked on cross-examination."). In my view, when Kindred's lawyer demanded to know the good faith basis for asking McCoy whether he had been paid to testify, the trial court should have required disclosure of the information.

¶33. In addition, I disagree with the majority's view and disposition of the alleged intimidation and threats made to McCoy. He provided an affidavit alleging that one of the Country Club's lawyers attempted to dissuade him from testifying by telling him that there were some charges pending against him and he "could get locked up if [he] testified." After this very serious charge was made, the trial court held a hearing at which McCoy appeared and testified, under oath, that the threat was made and that, although he was scared, he testified anyway. The Country Club did not call its lawyer to the stand to deny the charge. Some twenty minutes after McCoy testified, he was, in fact, arrested just as the Country Club's lawyer allegedly promised him. McCoy provided the following sworn account: "After testifying, I left the courthouse and walked home . . . . Soon after my arrival, four police cars, two county and two city, pulled up in front of my house. Several officers got out of the cars, two went to the back of my house and two came to the front. . . ." The charges against McCoy had been pending for a decade.

¶34. Although one might argue that, since McCoy testified at trial despite the threat, then no harm, no foul. In my view, that is not appropriate. The trial court should have required the Country Club's lawyer to respond to the charge. If he admitted the threat, a mistrial should have been granted. If he denied making the threat, the trial court then could have judged the credibility of the evidence and decided whether or not he believed the threat was made. To assign absolutely no credibility to McCoy's unrebutted testimony and not require any response to the charge, was error and should result in a new trial, particularly since the alleged threat against McCoy was carried out.

18

¶35. We certainly should not, and do not, dismiss lightly the trial judge's discretion and judgment, particularly since he was there and we were not. However, a cold, verbatim record which can be reviewed many times, sometimes provides a more reliable basis for evaluating error than memory and analysis in the midst of an emotional and contentious trial.

¶36. For the reasons stated, I would reverse and remand for new trial.

**WALLER, P.J., JOINS THIS OPINION.**