# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1998-KA-01114-SCT

*JUANETTA ROBINSON a/k/a JEANETTA ROBINSON*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/22/1998 |
| TRIAL JUDGE: | HON. JANNIE M. LEWIS |
| COURT FROM WHICH APPEALED: | HUMPHREYS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | WILLIAM C. TROTTER, III |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BILLY L. GORE |
| DISTRICT ATTORNEY: | JAMES H. POWELL, III |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 12/02/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 12/23/99 |

## BEFORE PRATHER, C.J., MILLS AND COBB, JJ.

## COBB, JUSTICE, FOR THE COURT:

### STATEMENT OF THE CASE

¶1. This is a criminal appeal from the Humphreys County Circuit Court, where Jeanetta Robinson was convicted of murder on June 22, 1998. Robinson was sentenced to life imprisonment in the custody of the Mississippi Department of Corrections (MDOC). On appeal to this Court, Robinson raises four issues:

**I. WHETHER THE TRIAL COURT ERRED:**

**(a) IN REFUSING TO GRANT A DIRECTED VERDICT AT THE CLOSE OF THE STATE'S CASE-IN-CHIEF; OR**

**(b) IN DENYING PEREMPTORY INSTRUCTION AT THE CLOSE OF ALL THE EVIDENCE; OR**

**(c) IN DENYING THE MOTION FOR A NEW TRIAL OR FOR A JUDGMENT NOTWITHSTANDING THE VERDICT, AS SUCH VERDICT WAS CONTRARY TO THE LAW AND AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.**

**II. WHETHER THE TRIAL COURT ERRED IN ADMITTING INTO EVIDENCE**

**STATE'S EXHIBIT S-1, A COLOR PHOTOGRAPH OF THE VICTIM AT THE CRIME SCENE.**

**III. WHETHER THE TRIAL COURT ERRED IN ADMITTING INTO EVIDENCE SEVERAL AUTOPSY PHOTOGRAPHS THAT DID NOT BECOME AVAILABLE TO EITHER THE STATE OR THE DEFENSE UNTIL THE MORNING OF TRIAL.**

**IV. WHETHER THE TRIAL COURT ERRED IN ALLOWING THE TESTIMONY OF A WITNESS WHO REVEALED AT TRIAL, FOR THE FIRST TIME, THAT THE DEFENDANT HAD TOLD THE WITNESS OF A ROBBERY MOTIVE.**

## STATEMENT OF THE FACTS

¶2. Julia McKay, age seventy-nine years, was found dead at her home in Louise, Mississippi, as a result of numerous stab wounds. Jeanetta Robinson, age twenty-two, was arrested and gave a written and tape recorded statement to law enforcement authorities admitting to the stabbing of McKay. At trial, eight witnesses testified for the State during its case-in-chief.

¶3. One investigator testified that Robinson had initially denied knowing anything about the killing, but she later admitted that she had gone to McKay's home to use the telephone in order to call somebody to come and pick her up and take her baby to the doctor. According to Robinson's statement, after she took the telephone out of the bedroom, at some point McKay, for some unexplained reason, attacked her making Robinson mad. Robinson fought back by grabbing a knife and stabbing the victim. During the attack, Robinson apparently lost a scarf and a watch and later went back to the house to retrieve these items.

¶4. Mildred Drain, a long time resident of Louise, who knew both McKay and Robinson, testified for the State that she saw Robinson the day the murder occurred and questioned her about what she thought were blood stains on Robinson's shirt. Drain further testified that she had again discussed the stains on the shirt when Robinson and her Auntie visited in Drain's home, and Robinson continued to deny that it was blood, saying rather that it was just a pattern on a designer shirt. Later, when Robinson and Drain were both in jail (Drain on a DUI charge), Robinson told Drain that she had gone to McKay's house in order to rob her. This information did not become available until the day of the trial. At trial the Judge confirmed that when the State learned about Drain's statement, the State immediately informed the defense, whereupon the court asked if the defense needed additional time. The defense first objected, saying the State could have interviewed Drain months sooner, but did not ask for a continuance. The Judge stated:

> I'm going to overrule the objection of the defense in that the State has indicated to this Court that they learned of this statement right before lunch, and immediately upon learning of the statement they immediately notified the defense of the statement. The Court will allow the defense any additional time that you need as a result of this statement to talk to your client before this witness testifies.

¶5. Another State's witness, Sheriff Jones, testified that Robinson informed him, after she had given a written confession, that she had gone back to McKay's house in order to retrieve her watch and scarf. Robinson told the sheriff that she had to enter the house through a window and had to turn the body over in order to retrieve her watch. Jones was recalled to the witness stand, over objection by the defense, in order to clarify who took some of the photographs that were to be admitted into evidence. Jones admitted that he did in fact take the photographs entered as exhibits numbered S-1 and S-2 A through D.

¶6. State's witness, Edward Lee Jenkins, testified that Robinson came by his house sometime in late August or early September and informed him that she had killed "Butcher B," apparently a nickname for McKay, stabbing her "like 17 times". Jenkins then informed the sheriff.

¶7. Arnold Hankins, an investigator with the Mississippi Highway Patrol's Criminal Investigation Bureau, testified that he took photographs of the crime scene. Hankins also interviewed Robinson and testified that at the initial interview Robinson asserted that McKay began to attack her for no reason. Hankins further testified that the following exchange of conversation took place during his interview with Robinson:

> Jeanetta responded: "So she went in there, too. I got the phone, and we walked, both of us walked back out of the room." . . . "I sat on the couch. I don't know what happened to her. She just went, went off." . . .
>
> Hankins: "What did she attack you with?"
>
> Jeanetta: "Just herself. It wasn't with anything, just herself."

During this same interview, Robinson admitted stabbing McKay after the altercation.

¶8. Dr. Steven Hayne, the State's pathologist, testified that:

> . . . there were a total of 47 stab wounds located over different parts of the body, but predominantly concentrated over the chest area. Of those 47 stab wounds, four were lethal in that they would produce death, and death was produced by those four stab wounds, leading to three stab wounds of the right lung and one stab wound of the heart.

¶9. Hayne testified about photographs that he brought with him to trial that had never been seen by either the prosecution or defense. Defense counsel objected and in the alternative made a motion that only certain photographs be selected. The trial judge instructed the defense to look at the photographs. At this time, defense counsel again objected, stating that failure to provide him copies of the photographs was a discovery violation. The record reflects that defense counsel did not file a discovery request in writing and stated at trial that he only made an oral request to counsel opposite. The trial judge noted that there was no written request for discovery and admitted some of the photographs into evidence, after allowing additional time for defense counsel to examine them and consult with his client.

¶10. After the State rested, the defense moved to dismiss the charges for lack of making a prima facie case or, in the alternative to reduce the charge to manslaughter. The court denied the defense's motion for a directed verdict after hearing argument from the State that evidence had been presented to prove a prima facie case of murder and that all the elements of murder had been shown. The State argued that Robinson did have malice aforethought, a necessary ingredient to the crime of murder, as evidenced by her actions, including her own statement: "I got mad and went and got a knife and I stabbed her multiple times."

¶11. The jury found Robinson guilty of murder in violation of Miss. Code Ann. § 97-3-19 (1)(a), and she was ordered to serve a life sentence in the custody of the MDOC. Robinson filed a motion for a JNOV which was denied. Robinson raises four issues on appeal to this Court.

## ANALYSIS

**I. WHETHER THE TRIAL COURT ERRED:**

**(a) IN REFUSING TO GRANT A DIRECTED VERDICT AT THE CLOSE OF THE STATE'S CASE-IN-CHIEF OR**

**(b) IN DENYING PEREMPTORY INSTRUCTION AT THE CLOSE OF ALL THE EVIDENCE OR**

**(c) IN DENYING THE MOTION FOR A NEW TRIAL OR FOR A JUDGMENT NOTWITHSTANDING THE VERDICT, AS SUCH VERDICT WAS CONTRARY TO THE LAW AND AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.**

¶12. The standard of review on these issues is well settled. As distinguished from a motion for a judgment notwithstanding the verdict, a motion for new trial asks that the jury's guilty verdict be vacated on grounds related to the weight, not sufficiency, of the evidence presented at trial. *May v. State*, 460 So. 2d 778, 781 (Miss. 1984). "We will not order a new trial unless convinced that the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice."*Groseclose v. State*, 440 So. 2d 297, 300 (Miss. 1983). "The Supreme Court will reverse the lower court's denial of a motion for a new trial only if, by denying, the court abused its discretion." *Gleeton v. State*, 716 So. 2d 1083, 1089 (Miss 1998). Furthermore, we are to consider all evidence in the light most favorable to the prosecution, accepting all credible evidence consistent with the verdict as true. *Ashford v. State*, 583 So. 2d 1279, 1281 (Miss. 1991). We must also accept all reasonable inferences drawn from the evidence that are consistent with the verdict. *Id*. *Ashford* held:

> [O]nce the jury has returned a verdict of guilty in a criminal case, we are not at liberty to direct that the defendant be discharged short of a conclusion on our part that given the evidence, taken in the light most favorable to the verdict, no reasonable, hypothetical juror could find beyond a reasonable doubt that the defendant was guilty.

*Id*. Matters regarding the weight and credibility of evidence must be resolved by the jury. *Fisher v. State*, 481 So. 2d 203, 212 (Miss. 1985).

¶13. If a defendant puts on evidence in his own defense after the denial of his motion for directed verdict, he waives his challenge to the sufficiency of the State's evidence up to that point. *Stringer v. State*, 557 So. 2d 796, 797 (Miss. 1990). Our authority to interfere with the jury's verdict is quite limited when a defendant challenges the legal sufficiency of the evidence. We consider all evidence in the light most consistent with the verdict, and give the prosecution the benefit of all favorable inferences. Only if reasonable men could not have found beyond a reasonable doubt that the defendant was guilty will we reverse. *McFee v. State*, 511 So. 2d 130, 133 (Miss. 1987).

¶14. Although the testimony presented in this case is contradictory, the State provided ample evidence to support the jury's verdict. It was possible and reasonable for the jury, upon the evidence at trial, ultimately to conclude that Robinson had stabbed McKay and that it was done with malice aforethought. The stabbing of an unarmed seventy-nine year old woman, 47 times, by a twenty-two year old defendant is evidence sufficient to support the jury's finding of malice and the verdict of murder. Further, to allow this verdict to stand does not sanction an unconscionable injustice, as the record reflects evidence to support the jury's findings. *Eakes v. State*, 665 So.2d 852, 872 (Miss. 1995). We find this assignment of error without

merit.

## II. WHETHER THE TRIAL COURT ERRED IN ADMITTING INTO EVIDENCE STATE'S EXHIBIT S-1, A COLOR PHOTOGRAPH OF THE VICTIM AT THE CRIME SCENE.

¶15. The admissibility of photographs rests within the sound discretion of the trial judge and will not be disturbed absent a showing of an abuse of discretion. *Westbrook v. State*, 658 So.2d 847, 849 (Miss. 1995). Rule 611 of the Mississippi Rules of Evidence pertaining to witnesses allows the court ". . . reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, [and to] (2) avoid needless consumption of time . . . ."

¶16. Exhibit S-1 was introduced into evidence during the testimony of Humphreys County Sheriff John Allen Jones. During his initial testimony, Jones did not remember who took the photograph marked as S-1, but he did remember that it depicted what he saw when he arrived on the scene to investigate the homicide:

> I saw an elderly black lady laying on her back, her legs crossed; it appeared there was a curtain across a doorway going into a kitchen, it was pulled down in a pool of blood.

When shown exhibit S-1, Jones was asked:

> Q. Let me show you what's been marked for identification as S-1 and ask you if this is the elderly lady that you saw when you went in?
>
> A. Yes, sir.
>
> Q. Was that the condition that you found her in?
>
> A. Yes, sir.
>
> Q. Okay. Do you know who took that picture?
>
> A. I'm not sure.

Jones was shown other photos taken at the scene in which he identified the house where the victim lived and the window where the defendant apparently re-entered the house. These were marked for identification and received by the court. Later in the trial, Deputy Sheriff Zelie Shaw testified that he was present when the photographs in question were taken and that Sheriff Jones was the person who took the photographs. The State then asked the court to allow Jones to be recalled, over objection by the defense, in order to have the photographs properly admitted. In response to the objection of the defense, the court stated that recalling Jones would not unduly prejudice the defense and allowed him to be recalled for the limited purpose of that one question. Jones was recalled whereupon he again identified the photographs and stated that he did remember taking the photographs and that they correctly depicted the crime scene and the position of the body as he found them upon initial discovery. The photographs were then admitted into evidence.

¶17. Arguing that the admission of these photographs was reversible error, Robinson relies on *Sharp v. State*, where this Court stated that "photographs of the victim should not ordinarily be admitted into evidence where the killing is not contradicted or denied and the corpus delicti and the identity of the

deceased have been established." ***Sharp v. State***, 446 So.2d 1008, 1009 (Miss. 1984) (citing ***Shearer v. State***, 423 So.2d 824, 827 (Miss.1982). However, "the mere fact that a photograph may arouse the emotions of jurors does not render it incompetent so long as the photograph serves a legitimate evidentiary purpose." ***Sharp*** at 1009. (citing ***May v. State***, 199 So.2d 635, 640 (Miss.1967); ***Shearer v. State***, supra). This Court went on to state that it would not require a reversal on the ground of improper admission of evidence unless it affirmatively appeared that the admission resulted in a miscarriage of justice. ***Sharp*** at 1009. In the case *sub judice*, the photographs in Exhibit S-1 corroborated Sheriff Jones's testimony regarding the scene of the crime at the time of his arrival and the position and identity of the victim. The photographs showed the victim's physical condition and the fact that the body had apparently been moved, a factor probative of Robinson's claim that she had re-entered the home in order to retrieve her scarf and watch. Thus, the photographs had probative value and the trial court did not abuse its discretion in admitting the photographs. This assignment of error is without merit.

### III. WHETHER THE TRIAL COURT ERRED IN ADMITTING INTO EVIDENCE SEVERAL AUTOPSY PHOTOGRAPHS THAT DID NOT BECOME AVAILABLE TO EITHER THE STATE OR THE DEFENSE UNTIL THE MORNING OF TRIAL.

¶18. Robinson argues that it was prejudicial to allow Dr. Hayne to introduce photographs at trial that had not been available to either side until trial, stating that ***Galloway v. State*** stands for the proposition that tardy disclosure of evidence may be prejudicial even if the record does not reflect such prejudice. The distinction between ***Galloway*** and the case *sub judice* that Robinson fails to point out was that in ***Galloway***, a witness was introduced whose testimony "quite simply gutted the defense theory of the case" . . . and therefore it "was error that Galloway was not given fair advance notice thereof, nor reasonable opportunity to meet it." ***Galloway v. State***, 604 So.2d 735, 740 (Miss. 1992).

¶19. In the case *sub judice*, the evidence introduced at trial was additional photographs of the victim taken by Dr. Hayne, the State's pathologist, of the victim showing the multiple slash and stab wounds. [Mississippi Uniform Rules of Circuit and County Court Practice Rule 9.04 (I)](#) which pertains to discovery states in pertinent part:

> If during the course of trial, the prosecution attempts to introduce evidence which has not been timely disclosed to the defense as required by these rules, and the defense objects to the introduction for that reason, the court shall act as follows:

> 1. Grant the defense a reasonable opportunity to interview the newly discovered witness, to examine the newly produced documents, photographs or other evidence; and

> 2. If, after such opportunity, the defense claims unfair surprise or undue prejudice and seeks a continuance or mistrial, the court shall, in the interest of justice and absent unusual circumstances, exclude the evidence or grant a continuance for a period of time reasonably necessary for the defense to meet the non-disclosed evidence or grant a mistrial.

> 3. The court shall not be required to grant either a continuance or mistrial for such a discovery violation if the prosecution withdraws its efforts to introduce such evidence.

> The court shall follow the same procedure for violation of discovery by the defense.

When Dr. Hayne, during direct examination by the State, began to discuss photographs that had not been

made available until the day of the trial, defense counsel requested a bench conference out of hearing of the jurors, and entered his objection. Following Rule 9.04, the court allowed defense counsel time to look at the photographs whereupon he clarified that his objection was to the fact that the photographs had not been made available during discovery. The State pointed out and the record reflects that Robinson did not file for discovery. The court noted that no written discovery request had been filed and the defense was given time to look at the photographs and make objections. The court limited the number of photographs, allowing each side to choose the ones to be shown. The photographs were introduced over objection, again, by the defense. At this time, defense did not ask for a continuance or a mistrial as required by Rule 9.04 and relied on *Galloway* in his argument of unfair prejudice. As stated in *Galloway*, Rule 4.06 (now 9.04) is important in the process of curing surprise in the introduction of evidence, and the court outlined the steps necessary to effectuate this cure. If the defense is of the opinion that he has been unfairly surprised by the undiscovered evidence, the rule requires he affirmatively request a continuance. He is to be given time to examine the evidence and after so doing, may move for a continuance. The court allowed defense time to look at the photographs, and the defense did not ask for a continuance. The introduction of the photographs which depicted the victim at the time of arrival at the morgue showed the multiple injuries to the chest, the lethal stab wounds, the stab wounds to the back and wounds on the back of the hand and forearm that Dr. Hayne described as "defensive posturing injuries." The photographs were probative to refute Robinson's claim of self-defense and also supported the finding by the jury of "deliberate design" murder. This Court has previously stated that where the only eyewitness to a slaying was the defendant and the defendant argued that the slaying was something other than murder, the relevancy of photographs showing the scene and the victim is increased. *Walters v. State*, 720 So.2d 856, 863 (Miss. 1998) (citing *Underwood v. State*, 708 So.2d 18, 33 (Miss. 1998) (quoting *Griffin v. State*, 557 So.2d 542, 550 (Miss.1990)). This assignment of error is without merit.

### IV. WHETHER THE TRIAL COURT ERRED IN ALLOWING THE TESTIMONY OF A WITNESS WHO REVEALED AT TRIAL, FOR THE FIRST TIME, THAT THE DEFENDANT HAD TOLD THE WITNESS OF A ROBBERY MOTIVE.

¶20. The State called as it's final witness, Mildred Drain, who testified that Robinson told Drain she went to McKay's house to rob her. The defense objected on the grounds of belated disclosure since the remark was revealed for the first time during the lunch hour of the day of the trial. Robinson argues that this "surprise testimony" "quite simply gutted" the defense theory of self-defense or manslaughter.

¶21. The time and procedure for the defense to correct what it perceived to be an error in admitting new evidence was to ask for the opportunity to interview the witness and then after not being satisfied of a cure of the error, to ask for a continuance or a new trial. Again Mississippi Uniform Rules of Circuit and County Court Practice Rule 9.04 provides the steps necessary for the court to take when there has been an alleged discovery violation due to evidence being introduced for the first time at trial. The court followed the correct procedure by confirming that the State learned about the statement from Drain during the lunch break and immediately informed the defense. The court advised defense counsel that he would be allowed "any additional time that you need." The record reveals that the defense did not ask for additional time beyond what was given, and no motion for continuance was made. Then the court allowed the witness to testify. The defense chose not to ask for a continuance at the proper time, which would have allowed him to cure any defects he considered material by the introduction of new witness testimony. The testimony presented was probative of a motive and reason for the attack. There was no abuse of the trial court's discretion to admit this evidence. The jury instructions given allowed the jury to consider the theories presented by each

side of the case. Therefore, this assignment of error is without merit.

## CONCLUSION

¶22. This Court affirms Robinson's conviction of murder. We find no error to warrant reversal. Therefore, the judgment of the Humphreys County Circuit Court is affirmed.

¶23. **CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, SMITH, MILLS AND WALLER, JJ., CONCUR. McRAE, J., CONCURS IN RESULT ONLY.**