883 So.2d 599 (2004)
William Lee (Willie) WORTHAM, Appellant
v.
STATE of Mississippi, Appellee.
No. 2002-KA-02135-COA.
Court of Appeals of Mississippi.
June 29, 2004.
Rehearing Denied October 5, 2004.
*601 Mack A. Bethea, Gulfport, attorney for appellant.
Office of the Attorney General by Jean Smith Vaughan, attorney for appellee.
EN BANC.
MYERS, J., for the Court.
¶ 1. William Lee (Willie) Wortham was indicted for the murders of his wife, Shirley Wortham, and her son, Lavon Buckhalter. Wortham was tried by a jury in the Circuit Court of Stone County. He was convicted on both counts and sentenced to life imprisonment. From that conviction, he appeals and raises the following issues:
I. DID THE TRIAL COURT ERR IN DENYING WORTHAM'S MOTION FOR A DIRECTED VERDICT?
II. WAS THE JURY PROPERLY INSTRUCTED WITH REGARD TO THE ELEMENT OF DELIBERATE DESIGN?
III. DID THE TRIAL COURT ERR IN REFUSING WORTHAM'S PROFFERED MANSLAUGHTER INSTRUCTIONS?
IV. DID THE TRIAL COURT ERR IN REFUSING WORTHAM'S PROFFERED CIRCUMSTANTIAL EVIDENCE INSTRUCTION?
V. DID THE TRIAL COURT ERR IN PROHIBITING WORTHAM FROM EXAMINING THE CHIEF INVESTIGATOR CONCERNING HIS POSSIBLE MOTIVE FOR SECURING A CONVICTION?

STATEMENT OF FACTS
¶ 2. Sometime after midnight on July 5, 2001, Willie Wortham knocked on the door of a house located on Lawton Road in Saucier, Mississippi. Shon Davis answered the door and knew Wortham because he used to be married to her aunt and the couple previously lived nearby. Wortham asked Shon to wake up her *602 mother so she did. Davis testified that Wortham had blood on him and told her that he had killed his wife and son. Davis asked Wortham how he knew they were dead and Wortham said, "I made sure that they were dead. I cut their throats."
¶ 3. Shirley Summitt testified that Wortham used to be married to her sister. Summitt testified that Wortham knocked on her door the same night and asked for money, gas, and clothes. Summitt asked Wortham what was wrong and he said, "I done killed Shirley and her son." Like Davis, Summitt also asked Wortham how he knew they were dead. Summitt testified that Wortham then stated, "I made sure them m____f____s were both dead." Summitt gave Wortham twenty dollars, a pair of pants, and told him to leave. Summitt then called her brother who lived nearby and asked him to come over.
¶ 4. When Summitt's brother arrived, Wortham was still on the property so they called the Harrison County Sheriff's Department. Wortham was arrested, given Miranda warnings, and placed in a patrol car without incident. Deputy Jay McKnight testified that as Wortham and he were walking to the patrol car Wortham stated, "She messed me up. I gave money to pay bills and she messed me up. Nobody messes me up."
¶ 5. Shortly thereafter, Lieutenant Jason Buxton of the Wiggins Police Department received a dispatch from the Harrison County Sheriff's Department informing him that they had a man named Willie Wortham in their custody who was suspected of murdering his wife and step-child. As a result, Buxton and two other police officers responded to a mobile home located at 1023 Martin Luther King Drive in Wiggins.
¶ 6. Upon arriving, two officers surrounded the mobile home while Buxton knocked on the front door. There was no response so Buxton opened the door and announced that he was an officer with the Wiggins Police Department. Again, there was no response. Buxton testified that there were items scattered along the floor in the hallway of the trailer and it appeared that there had been a struggle. Buxton also testified that he noticed a person's legs lying in the doorway of the east bedroom of the mobile home.
¶ 7. Buxton went into the bedroom and noticed a female adult and a male child lying on the floor. Buxton testified that the victims were covered in blood, were not breathing, and had no pulse. Buxton also testified that there was blood all over the room. At that point, all three officers exited the residence and roped off the mobile home with crime scene tape. Buxton then called the dispatcher at the Wiggins Police Department and asked her to inform the police chief, investigator, and ambulance service. No search was conducted at the residence at that time. The victims were later identified as thirty-four year old Shirley Wortham and eleven year old Lavon Buckhalter.
¶ 8. Buddy Bell, the investigator for the Wiggins Police Department, arrived at the scene and Buxton informed him of the situation. The two men then traveled to Lawton Road in Saucier where the Harrison County deputies had Wortham in custody. When Buxton and Bell arrived, Wortham was in the back seat of a patrol car. Bell removed Wortham from the patrol car and read Wortham his Miranda rights. Bell testified that Wortham acknowledged that he understood his rights and then told Bell that he had killed his wife.
¶ 9. The Harrison County deputies informed Bell that they found a car nearby that was registered to Shirley Wortham. *603 Although there was no search of the car at that time, Bell testified that he could see blood on the driver's seat, driver's door, and steering wheel. Apparently, Wortham was in route to Mobile, Alabama when he ran out of gas in Saucier. Bell then collected four pieces of bloody clothing found along the road between Shirley Wortham's car and Summitt's house. Bell testified that Wortham later told him that he discarded a knife somewhere between Wiggins and Saucier. Despite a three day search of the area, no murder weapon was ever found.
¶ 10. At trial, the State tendered Dr. Paul McGarry as an expert. Dr. McGarry is a forensic pathologist and performed the autopsies of both victims. Dr. McGarry testified that Shirley Wortham had been stabbed twenty-nine times. Dr. McGarry stated that several of the wounds were four and-a-half inches deep and penetrated her heart, pancreas, both lungs, and the tissue of her upper abdomen. Dr. McGarry also stated that Shirley Wortham had wounds on her hands and arms. Dr. McGarry testified that wounds of this type are inflicted when the arms are put in front of the body in a defensive posture. Dr. McGarry testified that Shirley Wortham died from massive blood loss.
¶ 11. Dr. McGarry testified Lavon Buckhalter was stabbed twenty-seven times with many of the wounds penetrating his vital organs. Like his mother, Buckhalter also had defensive wounds on his hands and arms. Dr. McGarry testified that Buckhalter died from massive blood loss due to deep stab wounds in his heart and lungs.
¶ 12. After the State rested, Wortham moved for a directed verdict. The trial judge denied this motion and Wortham chose not to testify. After instructions and deliberations, the jury returned guilty verdicts on both counts. Wortham received two life sentences to be served consecutively in the custody of the Mississippi Department of Corrections. Wortham's post-trial motion was denied, and as a result, he filed a notice of appeal. Finding no error, we affirm for reasons set out below.

LEGAL ANALYSIS
I. DID THE TRIAL COURT ERR IN DENYING WORTHAM'S MOTION FOR A DIRECTED VERDICT?
¶ 13. Wortham argues that the State's evidence was insufficient because it failed to prove that he acted with deliberate design. Wortham also argues that the evidence was insufficient because there was no eyewitness, no lab analysis on the blood, no confession, and no murder weapon.
¶ 14. When someone challenges the sufficiency of evidence on appeal, our standard of review is well settled. "Our authority to interfere with the jury's verdict is quite limited." Robinson v. State, 749 So.2d 1054, 1059 (¶ 13) (Miss.1999). "We consider all evidence in the light most consistent with the verdict, and give the prosecution the benefit of all favorable inferences." Id. "Only if reasonable men could not have found beyond a reasonable doubt that the defendant was guilty will we reverse." Id.
¶ 15. Wortham was indicted under our murder statute which states:
(1) The killing of a human being without the authority of law by any means or in any manner shall be murder in the following cases:
(a) When done with deliberate design to effect the death of the person killed, or of any human being;
Miss.Code Ann. § 97-3-19 (Rev.2000).
¶ 16. "`[D]eliberate' always indicates full awareness of what one is doing, *604 and generally implies careful and unhurried consideration of the consequences." Windham v. State, 520 So.2d 123, 126 (Miss.1988). "Design" means to calculate, plan, or contemplate. Id.
¶ 17. The evidence at trial was comprised of seven witnesses all of whom were offered by the State. It is the jury's duty to determine witnesses' credibility and resolve any conflicts in their testimony. Reed v. State, 863 So.2d 981, 986-87 (¶ 20) (Miss.Ct.App.2003). Two of those witnesses testified that Wortham admitted to killing his wife and her child. Wortham also admitted that he made sure they were both dead. This was accomplished by using a kitchen knife to stab his unarmed wife twenty-nine times and to stab his unarmed stepson twenty-seven times. Finally, Wortham admitted that he lived in the mobile home where his wife and step-son were found.
¶ 18. Wortham argues that none of this evidence proves that he had a deliberate design to kill before the fatal acts occurred. However, a knife used in such a vicious manner has been held sufficient in satisfying the element of deliberate design. See Robinson, 749 So.2d at 1059 (¶ 14); Russell v. State, 497 So.2d 75, 76 (Miss.1986); Fairchild v. State, 459 So.2d 793, 802 (Miss.1984).
¶ 19. We find the State presented ample evidence to support the jury's verdict. It was possible and reasonable for the jury to ultimately conclude that Wortham had stabbed his wife and her son and that it was done with deliberate design. Therefore, we find no merit to this issue.
II. WAS THE JURY PROPERLY INSTRUCTED WITH REGARD TO THE ELEMENT OF DELIBERATE DESIGN?
¶ 20. Wortham argues the trial court erred in granting S-3 and S-4. "In granting or refusing various instructions, the instructions given must be read as a whole." Kelly v. State, 783 So.2d 744, 754 (¶ 28) (Miss.Ct.App.2000). The trial court enjoys considerable discretion regarding the form and substance of jury instructions. McGee v. State, 820 So.2d 700, 705(¶ 9) (Miss.Ct.App.2000). "The principal concern is that the jury was fairly instructed and that it understood each party's theory of the case." Id. If the instructions fairly announce the law and create no injustice, then no reversible error will be found. Fears v. State, 779 So.2d 1125, 1127(¶ 9) (Miss.2000).
S-3 states:
The Court instructs the Jury that design to kill is all that is required by Mississippi law to make a homicide a murder. Deliberate design means intent to kill, without authority of law and not being legally justifiable, legally excusable or under circumstances that would reduce the act to a lesser crime.
S-4 states:
A deliberate design as used elsewhere in these instructions cannot be formed at the very moment of the fatal act, however, the deliberate design need not exist in the mind of the defendant for any definite time, not for hours, days, or even minutes, but if there is deliberate design, and it exists in the mind of the defendant but for an instant before the fatal act, this is sufficient deliberate design to constitute the offense of Murder.
¶ 21. Wortham argues that S-3 is not explicit enough because the jury was not specifically told under what circumstances Wortham's acts would be reduced into lesser crimes. We find no merit to this argument for two reasons. First, the exact language complained of has previously been found to be proper. Tran v. State, 681 So.2d 514, 516 (1996). In Tran, the supreme court found the language of the *605 instruction did not preclude the possibility that a killing could be deliberate or intentional and yet be other than murder. Id. at 516-17.
¶ 22. Second, "[a] party has the right to have his theory of the case presented to the jury by instructions, provided that there is credible evidence that supports that theory." McGee v. State, 820 So.2d at 705(¶ 9). In the instant case, Wortham did not put on any credible evidence to support any theory of defense. As a result, the trial court was not required to instruct the jury on all other circumstances under which they could have found the homicide to have been justifiable, excusable, or manslaughter. Tran, 681 So.2d at 520.
¶ 23. Wortham also argues that S-4 led jurors to believe that deliberate design could occur instantly at the very moment of the fatal act. Wortham cites Windham v. State, 520 So.2d at 125 (Miss.1988), where the Mississippi Supreme Court held that the deliberate design instruction constituted reversible error. In that case, an instruction given stated that deliberate design could be formed "at the very moment" of the fatal beating. Id. The supreme court held that the instruction conflicted with the manslaughter instruction which defined manslaughter as the willful, felonious killing of a human being, without malice in the heat of passion, by the use of a dangerous weapon, without authority of law and not in necessary self-defense." The controversial language in the instruction was "at the very moment."
¶ 24. However, the instruction at issue on this appeal adhered to the ruling in Windham by specifically stating that deliberate design could not be formed at the very moment of the fatal act. Moreover, unlike Windham, manslaughter was not a theory of culpability for Wortham. For these reasons, the problem that existed in Windham does not exist here. See Neal v. State, 805 So.2d 520, 525 (¶ 17) (Miss.Ct.App.2002).
¶ 25. The instruction given in the case sub judice is the same instruction considered in Carr v. State, 655 So.2d 824 (Miss.1995). In that case, the supreme court found an instruction identical to S-4 to be proper. Despite the fact that the instruction contained the phrase "but for an instant before," the court found the instruction to be a correct statement of the law because it specifically stated that deliberate design could not be formed at the very moment of the fatal act. Id. at 847. This language has been upheld in conjunction with other instructions as well. See Shipp v. State, 847 So.2d 806, 813-814(¶ 26) (Miss.2003) (accident); Theodore v. State, 798 So.2d 465, 470(¶ 22) (Miss.2001) (manslaughter).
¶ 26. We find no error in the granting of S-3 and S-4. We also find that the jury was properly instructed on the element of deliberate design. Therefore, we find no merit to this issue.
III. DID THE TRIAL COURT ERR IN REFUSING WORTHAM'S PROFFERED MANSLAUGHTER INSTRUCTIONS?
¶ 27. Wortham argues that the trial court erred in refusing D-1, D-2, D-3, D-4, D-11, D-12, D-14, and D-19. Wortham admits that he put on no actual defense at trial regarding heat of passion. Nevertheless, Wortham "asserts that the crime scene itself suggests heat of passion and uncontrollable rage of terror."
¶ 28. Wortham is entitled to have jury instructions given which present his theory of the case. "[H]owever, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is fairly covered elsewhere in the instructions, or is without foundation *606 in the evidence." Peet v. State, 811 So.2d 380, 382(¶ 9) (Miss.Ct.App.2001).
¶ 29. All of Wortham's proffered instructions in question were refused by the trial judge because there was no evidentiary support for them. Wortham put on no evidence of accident, misfortune, or heat of passion. In addition, there was no evidence that would entitle Wortham to have the jury instructed on the lesser included offense of manslaughter. "An unjustified and unexcused taking of life is presumed to be murder unless there is evidence upon which a jury can rationally justify mitigation down to manslaughter." Neal, 805 So.2d at 525 (¶ 16).
¶ 30. We find the trial court properly refused Wortham's manslaughter instructions. Therefore, we find no merit to this issue.
IV. DID THE TRIAL COURT ERR IN REFUSING WORTHAM'S PROFFERED CIRCUMSTANTIAL EVIDENCE INSTRUCTION?
¶ 31. The law is clear in this state. When a case is based wholly on circumstantial evidence, the trial court must give certain instructions. Jones v. State, 797 So.2d 922, 928 (¶ 26) (Miss.2001). However, a trial judge is not required to give an instruction on circumstantial evidence where there is direct evidence of the crime. Porter v. State, 616 So.2d 899, 909 (Miss.1993). Wortham argues that the trial court erred in granting C-3 and refusing D-13.
¶ 32. C-3 states:
The law presumes every person charged with the commission of a crime to be innocent. This presumption places upon the State of Mississippi the burden of proving the defendant guilty of every material element of the crime with which he/she is charged. Before you can return a verdict of guilty, the State must prove beyond a reasonable doubt that the Defendant is guilty.
The presumption of innocence attends the Defendant throughout the trial and prevails at its close unless overcome by evidence which satisfies the jury of his guilt beyond a reasonable doubt. The Defendant is not required to prove his innocence.
¶ 33. D-13 states:
The Court instructs the jury that if the jury can deduce from the facts and circumstances surrounding the case, either from the evidence or lack of evidence, any reasonable hypothesis consistent with the Defendant's guilt of a lesser offense than murder, then there is a reasonable doubt of his being guilty of murder, and the jury should return the following verdict:
"We, the jury, find the Defendant not guilty of murder, but we do find the Defendant guilty of manslaughter, in which case the Court shall sentence him as provided by law."
¶ 34. We disagree with Wortham's contention because there was direct evidence of his guilt presented at trial. Specifically, Wortham admitted to no less than two people that he killed his wife and her child. In addition, their testimony is not hearsay under Mississippi Rule of Evidence 801(d)(2). Since an admission of the accused is a type of direct evidence, no circumstantial evidence instruction was required. Deal v. State, 589 So.2d 1257, 1260 (Miss.1991) (citing Mack v. State, 481 So.2d 793, 795 (Miss.1985)).
¶ 35. We find the trial judge correctly granted C-3 and refused D-13. Therefore, we find no merit to this issue.
V. DID THE TRIAL COURT ERR IN PROHIBITING WORTHAM FROM EXAMINING THE CHIEF INVESTIGATOR CONCERNING HIS POSSIBLE MOTIVE FOR SECURING A CONVICTION?
¶ 36. During the examination of Investigator Bell, Wortham's attorney *607 asked Bell if he was running for sheriff. The State objected and the trial judge sustained the objection ruling that the question was irrelevant and immaterial. On appeal, Wortham argues that "[i]t is not out of the realm of possibility that a police officer, a chief investigator running for sheriff, could have an ulterior motive in testifying in a manner that would result in a `feather in his cap.'"
¶ 37. The admissibility and relevancy of evidence is within the discretion of the trial court and, absent an abuse of that discretion, the trial court's decision will not be disturbed on appeal. Ellis v. State, 856 So.2d 561, 565(¶ 9) (Miss.Ct.App.2003). In addition, the admission or exclusion of evidence must result in prejudice or harm, if a cause is to be reversed on that account. Id.
¶ 38. Upon a careful review of the trial transcript, we find no abuse of discretion on the part of the lower court. The trial judge was present when the examination transpired and he was in the best position to rule on its exclusion. Simply because a notion is within "the realm of possibility" does not, in any way, mandate a finding of relevancy under Mississippi Rule of Evidence 401. In addition, Wortham has not stated any prejudice or harm resulting from the trial court's limitation of Bell's examination. Therefore, we find no merit to Wortham's final issue.
¶ 39. THE JUDGMENT OF THE CIRCUIT COURT OF STONE COUNTY OF CONVICTION OF TWO COUNTS OF MURDER AND TWO LIFE SENTENCES TO RUN CONSECUTIVELY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO STONE COUNTY.
KING, C.J., BRIDGES AND SOUTHWICK, P.JJ., THOMAS, LEE, IRVING, CHANDLER AND GRIFFIS, JJ., CONCUR.