961 So.2d 720 (2007)
Newell Matthew BROWN, Appellant
v.
STATE of Mississippi, Appellee.
No. 2005-KA-00520-COA.
Court of Appeals of Mississippi.
January 16, 2007.
Rehearing Denied July 31, 2007.
*722 Jonathan M. Farris, attorney for appellant.
Office of the Attorney General by John R. Henry, attorney for appellee.
EN BANC.
*723 MYERS, P.J., for the Court.
¶ 1. Newell Matthew Brown was indicted on the charge of attempted burglary of an inhabited dwelling on December 29, 2003, in the Circuit Court of Forrest County. Leading up to the trial, Brown filed several motions including a demurrer and motion to quash the indictment and a motion in limine to preclude the victim from making an in-court identification. Following a hearing, these pre-trial motions were denied. At his jury trial, Brown was convicted of attempted burglary and sentenced to twenty-five years in the custody of the Mississippi Department of Corrections with fifteen years to be served and the remaining ten years suspended pending successful completion of five years of post-release supervision. Subsequently, Brown moved for a judgment notwithstanding the verdict or, in the alternative, for a new trial. Both post-trial motions were denied. Aggrieved by the denials of his motions and by the refusal of a proposed jury instruction, Brown appeals to this Court, assigning error to the trial court as follows:
I. IN DENYING HIS MOTION TO QUASH THE INDICTMENT.
II. IN DENYING HIS MOTION IN LIMINE TO PROHIBIT THE IN-COURT IDENTIFICATION.
III. IN DENYING A CIRCUMSTANTIAL EVIDENCE INSTRUCTION.
IV. IN DENYING HIS MOTION FOR DIRECTED VERDICT, REQUEST FOR PEREMPTORY INSTRUCTION AND MOTION FOR A JUDGMENT NOTWITHSTANDING THE VERDICT AS THE VERDICT REACHED BY THE JURY WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE AND WAS MANIFESTLY WRONG AS A MATTER OF LAW.
¶ 2. Finding no error, we affirm.

STATEMENT OF FACTS
¶ 3. The facts adduced at trial reflect that on June 14, 2005, Danielle Brantley, who had moved from California to Hattiesburg, Mississippi to attend college at the University of Southern Mississippi, began unpacking and moving into her new apartment. On June 15, 2005, Danielle decided to sleep her first night in the apartment on her mattress and box springs, which was positioned on the floor directly below her bedroom window. At approximately 2:30 a.m., she decided to go to sleep and turned off the television. Shortly thereafter, she began to hear heavy breathing coming from just outside her bedroom window and what sounded like someone attempting to tear off her bedroom window screen. Danielle immediately retrieved her cell phone, moved to the closet of her bedroom, located the police department telephone number, and called the department to report the prowler at 2:45 a.m. Danielle, feeling unsafe in her closet, then moved into the kitchen of the apartment. As Danielle was relaying her account to the police dispatcher, she went back into her bedroom and peeked out the window through the blinds. Danielle first told the dispatcher that she saw an abandoned bicycle in her yard that was not present when she went to bed. She then identified a man wearing a red t-shirt standing partially behind a large tree located in her backyard and approximately three feet from her bedroom window. However, Danielle was unable to identify the race of the prowler during her conversation with the police dispatcher. Minutes later, at or before 2:53 a.m., the police arrived at Danielle's apartment and immediately spotted a man, wearing a red t-shirt and riding a *724 bicycle, approximately ten feet away from Danielle's apartment, approaching a nearby alleyway. After giving several loud commands to the suspect to stop, the officers gave chase, overcame, and eventually apprehended the suspect later identified as Newell Matthew Brown. Thereafter, Danielle ended the telephone call with the dispatcher, exited her apartment and observed her window screen removed and Brown in handcuffs in the custody of the police officers.
I. DENIAL OF MOTION TO QUASH THE INDICTMENT
¶ 4. Brown first contends that the trial judge erred in overruling his demurrer and motion to quash the indictment against him. Brown's argument is premised on the assertion that the indictment's charge of attempted burglary does not set forth the elements of the offense of attempted burglary. The indictment against Brown reads:
Newell Matthew Brown in Forrest County, Mississippi, on or about June 15, 2003, did willfully, unlawfully, and feloniously design and endeavor to commit the offense of Burglary, a felony denounced by section 97-17-23, Mississippi Code of 1972, as amended, in that he did intend to enter through the window of the dwelling of Danielle Brantley; and did an overt act toward the commission thereof, to wit: removed the outer screen of a bedroom window; but he failed therein in that Police entered the area and eventually apprehended Newell Matthew Brown, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Mississippi.
¶ 5. Whether an indictment is fatally defective is an issue of law, and on appeal our review of legal issues is de novo. Peterson v. State, 671 So.2d 647, 652 (Miss.1996). We begin our review of the indictment against Brown by looking to Rule 7.06 of the Uniform Rules of Circuit and County Court. Rule 7.06 requires that an indictment "shall be a plain, concise and definite written statement of the essential facts constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation." The Rule makes clear that "[f]ormal and technical words are not necessary . . . if the offense can be substantially described without them."
¶ 6. The Mississippi Supreme Court has found an indictment for attempted kidnapping sufficient as to provide proper notice to a defendant, pursuant to Rule 7.06, when it specified the statute section number which the defendant was alleged to have violated and gave details of the alleged attempt, including the facts of how the attempt failed. Hersick v. State, 904 So.2d 116, 126(¶ 37) (Miss.2004). In Hersick, the appellant contended that the indictment against him was fatally flawed because while it stated that Hersick attempted kidnapping, the indictment failed to specify the specific manner in which the kidnapping took place. The supreme court dismissed Hersick's argument and held that the indictment provided sufficient detail, explaining that the "indictment against Hersick state[d] the essential facts, and fully notified him of the nature and cause of the accusation." Id. at (¶ 37). The indictment against Hersick described the charge of attempted kidnaping by using the language "a felony denounced by Sections 97-1-7 and 97-3-53, Miss.Code of 1972," gave the details of the alleged attempted kidnaping, and also provided the details concerning the thwarted attempt. Id. at (¶¶ 35-36). In the case sub judice, the language of the indictment against Brown is strikingly similar to the language in the indictment against Hersick. Here, *725 the indictment against Brown described the charge of attempted burglary by using the language "a felony denounced by Section 97-17-23, Mississippi Code of 1972," provided the details of the alleged attempted burglary, and also provided the details concerning the failure to complete the burglary. Following the guidance of our supreme court in Hersick, we find in this case that the indictment against Brown stated the essential facts, and fully notified him of the nature and cause of the charges brought against him. Thus, we find that this issue is without merit.
II. DENIAL OF MOTION IN LIMINE TO PROHIBIT THE IN-COURT IDENTIFICATION OF THE APPELLANT.
¶ 7. In his pre-trial motion, Brown sought to prohibit Danielle Brantley from making an in-court identification of him, which the trial court denied. Brown argues that the trial court should have excluded the testimony of Danielle because her identification of him was tainted and unduly suggestive. Brown maintains that the lower court erred in allowing Danielle to make an in-court identification of him after she had identified him outside of court by use of a "show up" identification method. Brown contends that the show up identification procedure gave rise to a misidentification and further argues that Danielle should not have been allowed to make an in-court identification under the standard set forth in Neil v. Biggers, 409 U.S. 188, 199-200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).
¶ 8. "The standard of review for suppression hearing findings in a matter of pretrial identification cases is whether or not substantial credible evidence supports the trial court's findings that, considering the totality of the circumstances, [the] in-court identification testimony was not impermissibly tainted." Ellis v. State, 667 So.2d 599, 605 (Miss.1995). However, should a trial court find that a pre-trial identification was impermissibly tainted, the subsequent in-court identification may still be admissible if it comports with the requirements of due process by testing the identification under the factors enumerated in Biggers. Biggers, 409 U.S. at 199, 93 S.Ct. 375; Ellis, 667 So.2d at 605. Further, we will not disturb the findings of the trial court unless there is an absence of substantial credible evidence supporting the lower court's decision. Id. at 604.
¶ 9. Brown argues that the use of the show up identification method tainted Danielle's identification of him at trial. We note, though, that "[o]nly pretrial identifications which are suggestive, without necessity for conducting them in such manner, are proscribed." York v. State, 413 So.2d 1372, 1383 (Miss.1982). "A show up [identification method] in which the accused is brought by an officer to the eyewitness is [] impermissibly suggestive where there is no necessity for doing so." Id. In this case, we cannot say that a show up identification method was utilized. The facts as adduced at trial indicate that Danielle exited her apartment immediately after Brown was apprehended in her backyard. At the suppression hearing, Danielle testified that the person apprehended in her backyard was Brown. Her identification of Brown resulted from her being at the scene of the arrest only a few minutes from the time she reported the ongoing crime. The situation in the case sub judice differs from that in which law enforcement officers produce an accused to a victim and ask the victim to identify the accused as the perpetrator. Even if this Court were to find that a show up identification method was utilized by the arresting officers, we would find that in this situation, the method *726 was necessary to apprehend the correct person.
¶ 10. Assuming arguendo that a show up identification method was unnecessarily used when Danielle identified Brown as the person who she saw in her backyard, this identification may still be "sufficiently reliable to overcome the taint of the prior improperly attained identification." Gayten v. State, 595 So.2d 409, 418 (Miss.1992). The lower court, in determining whether an in-court identification is sufficiently reliable to comport with the requirements of due process, applies the factors as enumerated in Biggers. Biggers, 409 U.S. at 199, 93 S.Ct. 375. The findings under the factors of Biggers that we review in determining the likelihood of misidentification are:
(1) the opportunity of the witness to view the criminal at the time of the crime;
(2) the witness' degree of attention;
(3) the accuracy of the witness' prior description of the criminal;
(4) the level of certainty demonstrated by the witness at the confrontation; and
(5) the length of time between the crime and the confrontation.
Id. at 199-200, 93 S.Ct. 375; Isom v. State, 928 So.2d 840(¶ 22) (Miss.2006). "Where the trial judge follows these factors and finds that, under the totality of the circumstances, the in-court identification is not impermissibly tainted because it is supported by sufficient credible evidence, this Court will not disturb that finding." Ellis, 667 So.2d at 605. A review of the record establishes that each of the Biggers factors was satisfied.
(1) The opportunity of the witness to view the criminal at the time of the crime
¶ 11. The trial court found that Danielle had ample opportunity to view Brown at the time of the attempted crime. At the suppression hearing, Danielle testified that she peeked out of her bedroom window blinds and viewed Brown for approximately ten seconds. The Mississippi Supreme Court has held that identifications are admissible when the witness viewed the criminal for only a few seconds. Horne v. State, 825 So.2d 627, 638(¶ 41) (Miss.2002). We find no error with the trial court's finding that Danielle had sufficient opportunity to view Brown at the time of the attempted burglary.
(2) The witness' degree of attention
¶ 12. Danielle's attention was entirely directed at viewing Brown as he tried to hide behind the tree, located approximately three feet from her bedroom window in her backyard. Therefore, we find no issue with the trial court's finding that the witness' degree of attention was sufficient.
(3) The accuracy of the witness' prior description of the criminal
¶ 13. Brown argues that Danielle's description of the perpetrator to the police dispatch officer did not contain enough details and therefore is insufficient to allow the later in-court identification. Brown's main assertion is based on Danielle's inability to identify the race of the individual at one point in her conversation with the dispatcher. During the suppression hearing, Danielle's testimony provided that she saw an abandoned bicycle and an individual wearing a red t-shirt in the backyard. Danielle testified that the individual she saw in her backyard was the same individual she later saw in custody. When Danielle was questioned as to the reason she did not provide any further details regarding the individual prior to the hearing, she responded that she was never asked for any further details. *727 There is no absolute requirement on the degree of detail necessary for a description to be adequate. Herrington v. State, 831 So.2d 580, 582(¶ 8) (Miss.Ct.App.2002). The trial judge found Danielle's description of the individual to be sufficiently accurate and we can find no error in this assessment by the lower court.
(4) The level of certainty demonstrated by the witness at the confrontation
¶ 14. Danielle testified to being one-hundred percent certain that the individual she saw in her backyard the night of the attempted burglary was Brown, and thus we find that the trial court did not err in finding this Biggers factor satisfied.
(5) The length of time between the crime and the confrontation
¶ 15. Lastly, it is clear from the record that the length of time between the crime and the confrontation was only a matter of minutes. Only a few minutes elapsed between Danielle's call to the police department and her identification of Brown, almost immediately upon his apprehension in her backyard.
¶ 16. The trial court reviewed each of the Biggers factors and considered the admission of the in-court identification under the totality of the circumstances. Ellis, 667 So.2d at 605. Our review of the record establishes that the Biggers factors, taken together, were properly considered by the trial court. We find that there was substantial credible evidence supporting the trial court's findings that the in-court identification testimony was not impermissibly tainted. Therefore, we affirm the trial court's admission of Danielle's in-court identification.
III. REFUSAL OF CIRCUMSTANTIAL EVIDENCE INSTRUCTION
¶ 17. Brown requested the trial court to give the jury proposed instructions D-6 and D-7. Both instructions were refused and, consequently, the jury was never instructedegarding the prosecutor's use of circumstantial evidence. Brown asserts that the refusal of the instructions is reversible error because he was entitled to a circumstantial evidence instruction. Proposed instruction D-6 would have informed the jury as follows:
The court instructs the jury that if the State has relied on circumstantial evidence to establish its theory of guilt of the defendant, then the evidence for the State must be so strong as to establish the guilt of the defendant, not only beyond a reasonable doubt, but the evidence must be so strong as to exclude every other reasonable hypothesis other than that of guilt.
Proposed instruction D-7 would have informed the jury as follows:
The court instructs the jury that if there be a fact or circumstance in this case which is susceptible of two interpretations, one favorable and the other unfavorable to the defendant, and if after considering all the other facts and circumstances there is reasonable doubt regarding the correct interpretation, then you, the jury, must resolve such doubt in favor of the accused, and place upon such fact or circumstance the interpretation most favorable to the defendant.
Upon our review of the proposed instructions, instruction D-6 was an instruction regarding the prosecutor's use of circumstantial evidence and instruction D-7 was an instruction termed a "two-theory" instruction.
¶ 18. "In determining whether error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole." *728 Johnson v. State, 823 So.2d 582, 584(¶ 4) (Miss.Ct.App.2002). "When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found." Id. In a criminal case in which the State's evidence is entirely circumstantial, the trial court is required to instruct the jury concerning the use and treatment of that type of evidence through two types of instructions: a circumstantial evidence instruction and a "two-theory" instruction. Jones v. State, 797 So.2d 922, 928(¶ 26) (Miss.2001). However, there is no requirement that a trial judge give instructions on circumstantial evidence where there is direct evidence, such as eyewitness testimony, presented of the crime. Wortham v. State, 883 So.2d 599, 606(¶ 31) (Miss.Ct.App. 2004); Porter v. State, 616 So.2d 899, 909 (Miss.1993); Deal v. State, 589 So.2d 1257, 1260 (Miss.1991). "We will not reverse a conviction based upon both direct and circumstantial evidence." Clark v. State, 503 So.2d 277, 278 (Miss.1987).
¶ 19. Brown argues that all of the evidence presented against him at trial was circumstantial in nature because Danielle could not testify that the defendant was the person who removed the window screen. In support of his argument, Brown points out that Danielle was unable to identify the race of the prowler at one point during her conversation with the police dispatcher, and therefore reasons that she could not possibly have been able to accurately identify the man in the red shirt as Brown at trial. The State argues that the victim testified that the man in the red shirt that she saw behind the tree was Brown. The State reasons that this testimony of Danielle amounted to direct evidence, and therefore a circumstantial evidence instruction was not required.
¶ 20. Our review of the record supports the State's argument that part of the case against Brown is based upon the direct evidence of Danielle's in-court identification of Brown as the perpetrator. While some of the evidence against Brown is circumstantial in nature, Danielle's testimony as an eyewitness was direct evidence supportive of the jury's finding of his guilt. Danielle testified that she saw the individual, and could identify his shirt, hair, and body build. She also testified that, upon his apprehension by the police officers, she recognized the suspect in custody as the same individual she had seen in her backyard a few minutes before. Therefore, we find that, in this case, the State's evidence is not wholly circumstantial, but based on both direct and circumstantial evidence. For this reason, we find that Brown was not entitled to a circumstantial evidence jury instruction and thus no reversible error was committed by the trial court.
IV. DENIAL OF MOTION FOR DIRECTED VERDICT, REQUEST FOR PEREMPTORY INSTRUCTION AND MOTION FOR A JUDGMENT NOTWITHSTANDING THE VERDICT.
¶ 21. Brown asserts that the State provided insufficient evidence to convict him of attempted burglary and assigns error to the trial court for the court's denial of his motion for a directed verdict, the court's passing upon his request for a peremptory instruction that would have asked the jury to return a verdict of not guilty, and for the court's denial of his motion for a judgment notwithstanding the verdict. In our review of the trial court, we consider the evidence before the court when the last objection was made. McClain v. State, 625 So.2d 774, 778 (Miss. 1993). The last challenge cited on appeal was made with Brown's request for the peremptory instruction and his motion for JNOV.
*729 ¶ 22. A trial court's denial of a motion for directed verdict, denial of a request for a peremptory instruction, and denial on a motion for a judgment notwithstanding the verdict all challenge the legal sufficiency of the evidence presented. Id. This Court considers the evidence in the light most favorable to the non-movant, giving the benefit of all favorable inferences that may be reasonably drawn from the evidence. If the evidence was sufficient to establish guilt beyond a reasonable doubt and to support a guilty verdict, the denial of the motions for a directed verdict, for a JNOV, and for peremptory instructions must be affirmed. Shelton v. State, 853 So.2d 1171, 1186(¶ 48) (Miss.2003); Jefferson v. State, 818 So.2d 1099, 1111 (Miss.2002); McClain, 625 So.2d at 778; Brown v. State, 556 So.2d 338, 340 (Miss. 1990).
¶ 23. To convict Brown for the offense of attempted burglary the State had to prove beyond a reasonable doubt (1) Brown's intent to commit burglary, (2) a direct ineffectual act done toward the burglary's commission, and (3) the failure to consummate the commission of the burglary. See Miss.Code Ann. § 97-1-7 (providing the elements of attempt and punishment thereof); Miss.Code Ann. § 97-17-23 (providing the elements of burglary of an inhabited dwelling).
¶ 24. At trial, several witnesses testified including Danielle, the police dispatcher who took Danielle's call, and the two responding police officers. The audiotape recording of the conversation between Danielle and the police dispatcher was played for the jury. Testimony provided that Danielle heard someone removing the screen from her bedroom window and breathing heavily. Further testimony showed that once the scene was investigated by Danielle and the officers, the screen was found removed from the window. Danielle further testified to having seen Brown in her backyard shortly after hearing the window screen tampering. Further, testimony presented showed that the police found Brown in her backyard within just a few minutes of Danielle's call to the police department.
¶ 25. Following our standard of review, viewing the evidence presented at trial in the light most favorable to the State and giving consideration to all reasonable inferences the jury may have drawn from this evidence, we cannot say that the evidence before the jury was insufficient to support a guilty verdict. Therefore, we affirm the lower court's denial of Brown's motion for directed verdict, request for a peremptory instruction, and motion for a judgment notwithstanding the verdict.
¶ 26. THE JUDGMENT OF THE CIRCUIT COURT OF FORREST COUNTY OF CONVICTION OF ATTEMPTED BURGLARY OF A DWELLING AND SENTENCE OF TWENTY-FIVE YEARS, FIFTEEN YEARS TO SERVE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND THE REMAINING TEN YEARS SUSPENDED UPON SUCCESSFUL COMPLETION OF FIVE YEARS' POST-RELEASE SUPERVISION IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO FORREST COUNTY.
KING, C.J., LEE, P.J., CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY. CARLTON, J., NOT PARTICIPATING.